WILLIAM DICKHUT, plaintiff in error, *vs.* THOMAS DURRELL, defendant in error.

## *Error to Adams.*

Where a motion for a new trial was made in the Court below and overruled, the evidence embodied in a bill of exceptions, but no allusion made in the bill to the motion or decision of the Court thereon, the decision of the Circuit Court, in overruling the motion, will not be reviewed by this Court.

Where a bill of exceptions was signed and filed several days after the trial took place, embracing the evidence and instructions of the Court, and concluding, "To all of which said defendant excepts," no error predicated upon such bill can be noticed by this Court.

A party, to avail himself of an exception to a decision of the Circuit Court, must take the exception at the time the decision is made; and the bill of exceptions must affirmatively show that it was taken at that time.

This Court will not presume that an exception was taken at the proper time, merely because the Judge who tried the cause has signed a bill of exceptions, when the bill does not show upon its face at what time the exceptions were, in fact, taken.

An established rule of practice, which has been acted upon for several years, ought not to be changed, even admitting that at the beginning it would have been better if a different rule had prevailed.

Where a demurrer is sustained to a plea, and the defendant is required to answer over, and he does file other pleas, the demurrer is waived, and the decision upon it cannot be assigned for error.

To an action on a covenant for the delivery of a specific quantity of lumber, the party relying on a performance of his covenant, must in his plea aver that he was ready and able to deliver the lumber at the time and place mentioned in the covenant.

An averment that the covenantee was then and there informed and advised that the lumber was ready for him, is insufficient.

This was an action of covenant instituted in the Adams Circuit Court, by the defendant in error against the plaintiff in error, upon a sealed agreement of the parties, in substance as follows, viz:

" That the said Thomas Durrell agrees to raft at Hill's mill, on the Wisconsin river, 110,000 feet of pine lumber,which belongs to said William Dickhut and Robert Bennison, and to deliver said raft, in good order, on the wharf at the city of Quincy, as soon as the same can be done; all at the expense and charge of the said Durrell. In consideration of which the said Dickhut agrees to pay the said Durrell $370, when said lumber shall be delivered as aforesaid.

" William Dickhut, (seal.)

" Thomas Durrell, (seal.")

The declaration contained two counts, which are substantially alike, and contain the following averments :

" And although the said Durrell hath well and truly performed and fulfilled all and singular the covenants in the said agreement mentioned, on his part and behalf to be done and performed, and did, as soon as soon as the same could be done, to wit, on the 4th day of April, 1840, provide, at his own expense and charge, a sufficient number of hands to raft 110,000 feet of pine lumber from Hill's mill, on the Wisconsin river, and to deliver the same, in good order, on the wharf at the city of Quincy, and proceeded immediately, to wit, on the said 4th day of April, 1840, to said Hill's mill, on the Wisconsin river, and demanded said 110,000 feet of pine lumber, and was ready and willing, and offered to raft the same from said Hill's mill, on the Wisconsin river, and to deliver the same, in good order, on the wharf, at the city of Quincy, as soon as the same could be done—all at the expense and charge of him, the said Durrell, yet protesting that the said Dickhut hath not performed and fulfilled any thing in the said article of agreement mentioned on his part and behalf to be done and performed. The said Durrell, in fact, saith, that the said Dickhut, after the making of said article of agreement, wholly failed and refused to furnish to him, the said Durrell, the said 110,000 feet of pine lumber at Hill's mill, on the Wisconsin river, to be rafted by him, the said Durrell, to the city of Quincy, although the said lumber was demanded by the said Durrell at the said Hill's mill, to be rafted as aforesaid, and hath wholly failed and refused to pay to the said Durrell the said sum of $370, as he had covenanted to do, and still doth refuse," &c.

The defendant, Dickhut, appeared to the action, and pleaded, in the first instance, four pleas : 1st, *non est factum*, upon

10

which issue was taken. 2d, a plea of general performance, in the usual form, to which plaintiff demurred, and defendant confessed the demurrer. 3d, a plea alleging that when plaintiff arrived at Hill's mill, the 110,000 feet of lumber was ready to be delivered to the plaintiff, and was offered to the plaintiff, and he refused to receive and raft the same, &c. A replication was filed, traversing the facts stated in the plea, and issue was joined thereon. 4th, a plea in these words: "And for further plea, &c. plaintiff *actio non,* because he, the said defendant, says that when the said plaintiff arrived at Hill's mill, on Wisconsin river, there was then and there ready for delivery to him a large quantity of pine lumber, to wit, 30,000 feet, and that said lumber was then and there offered to the said plaintiff, and he was then and there requested to take the same to be rafted and delivered according to the terms of the covenant aforesaid; and said plaintiff was then and there informed and advised that all the balance of said 110,000 feet of lumber should be furnished and delivered to him, the said plaintiff, as fast as he could raft the same; but the said plaintiff then and there wholly refused and neglected, and hath ever since refused and neglected, to raft said lumber and deliver the same to the said defendant," &c.

To this plea a replication in these words was filed: "And the said plaintiff· says *precludi non,* &c., because he says he did not refuse to receive and raft the said 110,000 feet of lumber, in manner and form," &c.

Defendant demurred to this replication, and the Court sustained the demurrer to the fourth plea, and the order of the Court was, "that the defendant do further answer to the said plaintiff's declaration."

The defendant thereupon filed his pleas numbers 5 and 6. These pleas averred that the defendant was ready to furnish, and did offer to furnish, the 110,000 feet of lumber at Hill's mill, &c., to the said plaintiff, &c., upon which issues were joined.

The cause was tried on the third day of March, 1842, upon the issue joined as hereinbefore set forth, before Justice Douglas, and a jury, when a verdict was rendered in favor of the plaintiff for the sum of $284 25, damages, and a judgment pronounced thereon. A motion for a new trial was made on the 9th day of March, 1842, overruled, and a bill of exceptions

taken and filed at the time the motion for a new trial was over-ruled.

The bill of exceptions sets out all the evidence, and instructions asked and given on the part of the plaintiff, and numbered 1 to 5, and concludes as follows, viz : " To all of which the said defendant, by his counsel, excepts, and prays that this his bill of exceptions may be signed, sealed, &c." No mention is made of a motion for a new trial, and no exceptions other than in the manner above named were taken to the instructions of the Court.

The errors relied upon are :

1. Overruling defendant's motion for a new trial.
2. Giving the instructions asked by plaintiff.
3. Sustaining demurrer to plea No. 4.

WILLIAMS & LAWRENCE, for plaintiff in error:

As to the construction of the contract : Watts *vs*. Shephard, 2 Ala., 425 ; McGeecher *vs*. Hill, 1 Ala., 140 ; Young *vs*. Foster, 7 Porter, 420.

As to the bill of exceptions : The bill of exceptions was filed in this case upon the overruling of the motion for a new trial, as stated in the order of the Court, and the exception is stated in the present tense. The reasonable intendment is that the exceptions were seasonably taken. Harlow *vs*. Humiston, 6 Cowen, 189 ; Wakeman *vs*. Lynn, 9 Wend., 242. In any event, now that a decision overruling a motion for a new trial can be assigned for error, it is in season to except to the instructions upon the decision of such motion. There are but two cases in our reports which look to the contrary : 2 Gilman, 293 ; 3 Scam., 17. The case in Gilman we regard but as a dictum; ( as the Court reversed the judgment on other grounds,) which dictum is placed on the authority of the case in Scammon. The case in Scammon is also but a dictum of the Judge who delivered the opinion, the counsel in that case not having assigned for error the instructions of the Court, and not having made those instructions a ground for a new trial in the Circuit Court. The fact that these instructions were not made a ground for a new trial in the Court below, is first given in the opinion of this Court as the reason for refusing to consider those instructions. We therefore deem ourselves at liberty to say, that these cases are not autho-

rity, and that the question is still open to be examined upon principle.

The original rule as to taking exceptions at the trial, applied only to exceptions to evidence. Wright *vs.* Sharp, 1 Salkeld, 288–9; 2 Tidd's Practice, 863; Bacon's Abridg., title, "Bills of Exceptions." It has been held in numerous cases that exceptions may be alleged to instructions of the Court, after the verdict is returned, but before it is pronounced in open Court. 1 Binney, 38; 4 Dallas, 249; 10 J. R., 312; 5 Monroe, 177; 8 S. & R., 211. The distinction as to taking exceptions before and after verdict is practically abolished in this state, by the law alleging exceptions to the overruling of a motion for a new trial; and the bill of exceptions in this case was filed in Court on the decision of such a motion, and one of the grounds of the motion was the erroneous instructions of the Court. The following cases are to the point: 4 Bibb, 278; 9 Conn., 545; 7 Watts & Searg., 172, quoted 1 Sup. to U. S. Dig.; 5 Smedes & Marshall, 51; 3 Pick., 173. See, also, 8 Cowen, 707–8–9, showing how anxiously an appellate Court will devise means of overcoming technical objections, where there is manifest error on the face of the record.

(We annex comments on the authorities cited by the counsel for the defendants in error.)

Comments on cases cited by defendants:

The case of Clemson *vs.* Krupper, Breese, 162, merely decides that a refusal to grant a new trial cannot be assigned for error. The bill of exceptions was to the evidence, and not to the instructions. The Court further say, that if the counsel mistook the law in regard to bills of exceptions, it might be ground for relief in a Court of Equity. Rather strange doctrine. In the case of Snyder *vs.* Lapamboise, Breese, 270, in which there was a bill of exceptions to evidence, the evidence not being excepted to at the time, the Court say, in regard to the inadmissibility of the evidence, that "were there no other objection to the judgment, the Court might well doubt whether they ought to interfere," and then proceed to reverse the judgment, because the instructions were wrong. The case of Gilmore *vs.* Ballard, 1 Scam., 253, merely remarks generally that an exception must be taken on the trial, and is decided wholly upon the ground that the cause having been tried by the Court, and no

motion having been made for a new trial, the Supreme Court could not review the evidence. Leigh vs. Hodges, 3 Scam., 17, is the opinion of Judge Breese already commented upon, where the misdirection of the Court had not been made a ground for the new trial below. In Miere vs. Brush, 3 Scam., 23, the record recited that, "on the 18th day of August" (after the term) "the defendants filed in the clerk's office their bill of exceptions," and the Court say, "it no where appears on the record that they alleged any exception whatever to any decision of the Court." The case of Gibbons vs. Johnson, 3 Scam., 63, was where the bill of exceptions was not taken till two days after the judgment. In the case of Vanderbilt vs. Johnson, 3 Scam., 50, the record did not show upon what grounds the motion for a new trial was made in the Court below, or that the affidavit in the record had been brought to the notice of the Court on hearing the motion, or that an exception was taken to the decision of the Court, which the Court say should have been done for the purpose of incorporating the affidavit, and other evidence relied on, in their bill of exceptions. The case of Heaton vs. Kemper, 2 Scam., 367, was precisely like the case at bar: the bill of exceptions appearing as to form, and the time when taken, and in all other particulars, to be identically like the one in this case, and the court do consider the instructions and pass upon them. In Cummings vs. McKinney, 4 Scam., 59, the Supreme Court did consider and pass upon a bill of exceptions taken after the overruling of a motion for a new trial. In Saunders vs. McCollins, 4 Scam., 419, no bill of exceptions of any sort was taken. The case of Barnes vs. Barber, 1 Gilm., 408, has not the remotest application to the case at bar. In Wren vs. Moss, 1 Gilm., 560, the Court reversed the judgment, because the Circuit Court had refused an instruction, though it is not stated in the case that the refusal to instruct was excepted to at the time. In Miller vs. Dodson, 1 Gilm., 574, the Court merely say that the refusal of the Circuit Court to grant a new trial, cannot be inquired into, as no exception was taken, and that the record showed no reason for granting a new trial. The case of Hill vs. Ward, 2 Gilm., 293, is the one already commented upon, and contains, as we deem, but a dictum of the Court referring to Judge Breese's dictum in Leigh vs. Hodges, 3 Scam., 17, already referred to, for authority.

These are all the cases in our reports, except 5 Gilm., 456, noticed below, referred to by the counsel for the defendant; and it will be perceived that there are only two of them (Leigh *vs*. Hodges, 3 Scam., 17, and Hill *vs*. Ward, 2 Gilm., 293,) which even refer to the question as to whether the instructions of the Court may not be made the ground of a motion for a new trial, and presented to this Court upon the decision of such motion, though the instructions may not have been excepted to at the time they were given.

In Evans *vs*. Fisher, 5 Gilm., 456, another case cited by defendants, the Court merely say that a bill of exceptions should appear on its face to have been taken at the trial, but the Court refuse to strike the bill in that case from the record, because it had been prepared and signed after term. In Sheppard *vs*. Wilson, 6 Howard, U. S. Rep., the Court decide that the Supreme Court of Iowa committed no error in rejecting a bill of exceptions, taken and purporting on its face to have been taken over two years after the trial of the cause. In Line *vs*. Evan, 1 Pike, 358, the Court merely decide that the pleadings should not be put into a bill of exceptions, and state truly the object of a bill—to preserve the evidence. In 2 Pike, 20, there was no bill of exceptions setting out the evidence in the case, but only notes of the evidence, which the Court refused to consider. In Walton *vs*. The U. States, 5 Cond. Rep., 721, the exceptions were to the evidence, and the Court say that the exception should be taken at the.trial; but in this very case the Court, before remarking this, had considered the evidence, and decided the case upon the merits. In 3 Pike, 452 and 461, the bill of exceptions was filed the day after judgment was entered, and considered a good bill. In the case in 3 Howard's Miss. Rep., 117, a motion had been made in the Court below for leave to withdraw a plea on affidavit. The bill of exceptions did not state the motion, and it was brought before the Supreme Court only by affidavit. The Court decide that the motion should have been presented in the bill. In this case there was a bill taken, after a motion for a new trial had been overruled, and the Court considered the questions presented by it. In 1 Howard, 126, the instructions had not been excepted to when they were given, and no motion for a new trial had been made.

BROWNING & BUSHNELL, for defendant in error :

1. An agreement will be construed with reference to extrinsic circumstances surrounding the transaction, and the situation of the parties, and the subject matter of the contract. Sayer *vs.* Peck, 1 Barb., 464; Hasbrook *vs.* Paddock, 1 Barb., 635, 638–9; Brown *vs.* Slater, 16 Conn., 192. The language used by one party in a contract is to receive such a construction as he supposed the other party would give to it, or such construction as the other party was fairly justified in giving it, and where equivocal words are used, they are to be taken most strongly against the party using it. Gunnison *vs.* Bancroft, 11 Vermont, 490; Evans *vs.* Saunders, 8 Porter, 497; Hawes *vs.* Smith, 3 Fairf., 429. Words in a contract will be construed to give effect to the contract, and so as to meet the real intention and understanding of the parties. Thrale *vs.* Newall, 19 Vermont, 202; Ferguson *vs.* Coleman, 3 Richardson, 99; Wilson *vs.* Jones, 8 Alaba., 536; Russel *vs.* Nicoll, 3 Wend., 118.

2. The representation in the contract is, that Dickhut & Bennison had lumber at the mill at the time of the contract. It does not represent that they would thereafter have the lumber sawed, or that they had a contract for lumber at the mill and were to have it at a certain time, but that they actually had it there. It did not appear even that the lumber was sawed or was to be sawed at that mill, or that it had any connection with the mill, except as the point at which their then lumber was located. Lumber at the mill in gross, to be sawed by the mill owners, and to be delivered to them, was not their lumber till actually measured and set apart for them; and if Hill had had a contract to deliver the lumber at the mill at a day named, it would still have remained Hill's so long as it was mixed up with other lumber. That Durrell was to go and get the lumber " as soon as it could be done," shows that the understanding was that Durrell was to find the lumber there. Barnes *vs.* Graham, 4 Cow., 452; McDonald *vs.* Howell, 15 John., 351; Russell *vs.* Nicoll, 3 Wend., 112, 118. There is no proof whatever that there was even an offer to Durrell to furnish him with the 110,000 feet of lumber belonging to Dickhut & Bennison, whose lumber alone he had contracted to raft. Proof that there was sufficient lumber in quantity without proving it was the lumber of Dickhut & Bennison, was not sufficient. Cobb *vs.* Williams, 7 John., 24;

Newton *vs.* Galbreath, 5 John., 119; Barnes *vs.* Graham, 4 Cow., 452. By the contract the lumber was to be there ready for him. Dickhut was bound to see that it was *all* there. Full performance in this respect was required of him. Rice *vs.* Churchill, 2 Denio, 145; Hammond *vs.* Gilmore, 14 Conn., 479, 485; Kimball *vs.* Grover, 11 N. H., 376. And Durrell was not bound to accept any of the lumber till it was all ready. He was not bound to accept of a part performance. Davenport *vs.* Wheeler, 7 Cow., 231; Cobb *vs.* Williams, 7 John., 24; Bruce *vs.* Pearson, 5 John., 535; Russell *vs.* Nicoll, 3 Wend., 118; Wilcher *vs.* Hale, 11 Eng. Com. Law, 224. If Dickhut did not have the lumber there, but expected to have it there on demand, or in a reasonable time on demand, so that Durrell would have to wait, he should have so informed Durrell. But in requiring peremptory movements of Durrell, he clearly did not expect any delay. If he represented the lumber as then being there, and he had at the time known the fact, it would have excused Durrell from any attempt to perform his contract. Harrington *vs.* Wills, 12 Vermont, 505, 509; Boodell *vs.* Parsons, 10 East., 359. Nor can Dickhut, having set up a complete performance by his plea, show any excuse or waiver of performance. Davenport *vs.* Wheeler, 7 Cow., 231.

But the questions sought to be raised in this case do not properly arise on the paper in the case called a bill of exceptions. It was signed and filed several days after the trial. It does not purport to be on exceptions taken at the time of the occurrences, nor is the motion for a new trial, the overruling of which is now assigned for error, even noticed or alluded to in the bill of exceptions. Exceptions to evidence must be taken as soon as the Court decides to admit or reject it, though the exception may be reduced to form afterwards. Pool *vs.* Fleeger, 11 Pet., 185, 211; *Ex parte* Bradstreet, 4 Pet., 102. A party cannot assign for error the admission of testimony to which he did not except. Sawyer *vs.* City of Alton, 3 Scam., 129; Smith *vs.* Moore, 3 Scam., 464; Scott *vs.* Floyd, 9 Pet., 441. The giving or refusing instructions must be excepted to at the time, and if not done, no exception can be taken to the decision of the Court in giving or refusing instructions, on a motion for a new trial. Hill *vs.* Ward, 2 Gilm., 293; Leigh *vs.* Hodges, 3 Scam., 15; Gibbons *vs.* Johnson, 3 Scam., 63; Gilmore *vs.* Ballard, 1 Scam.,

252; Miere vs. Brush, 3 Scam., 24; Ward vs.Ward, 3 Gilm., 285; Updike vs. Armstrong, 3 Scam., 566; Randolph vs. Asley, 8 Missouri, 656; Bompart vs. Boyer, ibid, 234; Life and Fire Insurance Company vs. Mechanics' Insurance Company, 7 Wend., 34.

The exceptions should be express and direct to the point in question. They may all be grouped in a single sentence; but they must be at least mentioned as exceptions taken at the proper time, and applied by the bill to the points raised for the examination of the Court, on writ of error. This bill excepts to "all the foregoing," but whether to the evidence or to the instructions no one can tell. Wallace vs. Warren, 17 Wend., 259; Frier vs. Jackson, 8 John., 495; Ludlam vs. Broderick, 3 Green, 269, 275; Trueluck vs. Peeples, 1 Kelly, 1; Reab vs. McAlister, 8 Wend., 109. The correct practice is to prepare the bill of exceptions on the trial, and file it of the term. Where this is inconvenient, a note of the exception should be taken at the time, and leave given by entries on the record, to reduce the note of exception to form afterwards, when the bill should be filed *nunc pro tunc*. But at whatever time the bill is reduced to form and signed, it should purport on its face to have been taken and signed at the time of the occurrences mentioned in it; otherwise, though copied into the record, it will be considered as no part of the record, and will be wholly invalid and disregarded. Evans vs. Fisher, 5 Gilm., 453; Leigh vs. Hodges, 3 Scam., 17; Walton vs. The United States, 5 Cond. Rep., 721; Shepherd vs. Wilson, 6 How. U. S., 260, 274–6; Law vs. Merrils, 6 Wend., 268; Wilson vs. Owens, 1 How. Miss., 126; Green vs. Robinson, 3 How. Miss., 105; The Governor vs. Evans, 1 Pike, 349, 360, 361; Lenox vs. Pike, 2 Pike, 14, 21–24; Shepherd vs. White, 3 Cow., 32; Gibbons vs. Johnson, 3 Scam., 61; *Ex parte* Bradstreet, 4 Pet., 107; Hawkins vs. Lowrey, 6 J. J. Marsh., 443.

Great stress is laid in numerous cases upon the fact that the statute requires that the exception should be taken at the trial. Such is our statute. Where this is required by statute we have been able to find no case in which it was not held that a bill of exceptions must show on its face, in express terms, that the exception was, in fact, taken at the proper time. See Revised Stat. 1833, page 491, sec. 19; do., 1845, page 416, sec. 21. Even in New York it is a question of practice. The law does

11

not specify the time when the exception shall be taken, and the exception, when taken, must appear on the face of the bill to have been taken at the time. Law *vs.* Jackson, 8 Cow., 746 ; 9 Wend., 241 ; Dean *vs.* Endley, 10 Wend., 255 ; The People *vs.* Dalton, 15 Wend., 581 ; 6 ibid, 268 ; Willard *vs.* Warren, 17 Wend., 259 ; 8 Cow., 746 ; 3 Pick., 174. The Court cannot reverse the judgment on the ground that the Court below erred in overruling the motion for a new trial. No exception was taken to the overruling of the motion. Independent of the fact that the general exceptions noted in the bill of exceptions were not taken in time, no exception was, at any time, taken to the overruling of said motion. The bill of exceptions is here copied into the record, and shows positively and conclusively that no such objection ever was taken, either at the time or afterwards, in the Court below. The bill of exceptions does not even notice or allude to any such motion, and it is only from an order on the record that we arrive at the knowledge that such motion was made. The decision of the Court in overruling the motion for a new trial, cannot be inquired into here, where it was not excepted to in the Court below, and at the time. Miller *vs.* Dobson, 1 Gilm., 574 ; Hill *vs.* Ward, 2 Gilm., 285 ; Barnes *vs.* Barber, 1 Gilm., 401, 407–8 ; Vanderbilt *vs.* Johnson, 3 Scam., 50 ; 1 U. S. Dig., page 412, sec. 37 ; Clemson *vs.* Kruper, Breese, 162 ; Gibbons *vs.* Johnson, 3 Scam., 61.

On the examination of the above cases, and the original record on file therein, the Court will find that the bill of exceptions contained the evidence and instructions, yet the Court would not act on the evidence or instructions, simply because the bill of exceptions was not taken and so shown to be in apt time, a view sustained by all the decisions as irrefragable. Nor does the fact that the evidence and instructions are all set out in the bill of exceptions, make any difference, unless the exceptions are properly taken at the proper time, and so shown by the bill. The bill is to be disregarded for all purposes, and the Court cannot in such cases look into the bill to see whether the Court erred in overruling the motion. That question has been already decided in this Court, and a similar question has been decided in New York. It results, as a necessary consequence of the principle so often decided, that the bill is a nullity. The bill cannot surely be a nullity, and be at the same time good and available

for all the purposes for which alone a bill of exceptions is taken, to wit, to bring before the Court, for the revision of errors said to have taken place during the progress of the trial. Leigh *vs.* Hodges, 3 Scam., 15; Gibbons *vs.* Johnson, 3 Scam., 63; Whiteside *vs.* Jackson, 1 Wend., 418, 421; Clemson *vs.* Kruper, Breese, 162.

As to the third plea: The defendant waived that plea by pleading over. If the defendant demurs to the declaration and then pleads to the declaration, he waives his demurrer. Snyder *vs.* Gaither, 3 Scam., 92; 3 Ala., 347; Wilcox *vs.* Woods, 3 Scam., 52. And if the demurrer to the declaration has been overruled, pleading to the declaration waives any error in such ruling. Vanderbilt *vs.* Johnson, 3 Scam., 48. And, in general, if on overruling a demurrer, the party resorts to ulterior pleading to the same point, the demurrer is waived. Barr *vs.* Phillip, Breese, 19; Burditt *vs.* Burditt, 2 A. K. Marsh., 143. So, in a case precisely like this, if after a demurrer to a plea is sustained, the defendant asks leave to plead over, he thereby waives the ruling on the demurrer. Wann *vs.* McGoon, 2 Scam., 74. The ordinary judgment on sustaining a demurrer to a plea, is final and not *respondeat ouster*. The defendant in this case will be presumed either to have denied this judgment of *respondeat ouster*, that he might plead over, or to have availed himself of the privilege of that judgment, by filing pleas four and five. These pleas state in express terms that they were filed by leave of the Court. In either event he has the same benefit as if he had literally amended his plea, and shows he was not willing to risk his case on the demurrer. The principle of waiver clearly applies to it; he did not stand by his demurrer. Bell *vs.* Morehead, 3 A. K. Marsh., 158; 5 Gilm., 459.

Opinion by Mr. Justice TRUMBULL:

We regret that the record in this case is so made up as to prevent an examination of the merits of some of the errors assigned, otherwise we should have no hesitation in reversing the judgment.

No exception was taken to the decision of the Court overruling the motion for a new trial, nor is any allusion made to that motion in the bill of exceptions. The plaintiff in error cannot now, therefore, object that his motion for a new trial was disallowed,

nor can he avail himself of any error of the court in giving instructions, because the record does not show that the instructions were excepted to at the time they were given.

It appears from the record that several days after the trial took place, and at the time the motion for a new trial was overruled, the defendant below filed his bill of exceptions, which, after giving the evidence in the cause, sets forth the instructions that were given, and concludes as follows : "To all of which said defendant excepts;" thus showing that the exception was then, for the first time, taken. This Court has repeatedly held that a party, to avail himself of an exception to a decision of the Circuit Court, must take the exception at the time the decision is made, and that the bill of exceptions must affirmatively show that it was taken at that time. Gibbons *vs.* Johnson, 3 Scam., 63 ; Miere *vs.* Brush, ibid, 23 ; Leigh *vs.* Hodges, ibid, 17. We are now called upon to change the rule which has been adopted, and to presume that an exception was taken in proper time, when the Judge has signed the bill of exceptions, and it does not show upon its face at what time the exception was taken, or rather, when, as in this case, it does show, that it was not taken at the time the decision complained of was made. This we cannot do. The case of Gibbons *vs.* Johnson, was precisely like this, and we decided at the last term of the Court at Ottawa, in the case of Evans *vs.* Fisher, 5 Gil., 453, that a bill of exceptions, in all cases, should appear on its face to have been taken and signed at the trial ; and if for any cause it is not then done, it should be executed *nunc pro tunc,* so as to appear to have been taken at the trial.

But we are not disposed at this time to enter into a discussion of the propriety of the rule adopted. It has been established by a number of decisions of the Court, and acted upon for several years as a settled rule of practice. In such a case the rule ought not to be changed by the Court, even admitting that at the beginning it would have been better if a different presumption had been indulged, and a different rule established. The fifth instruction was clearly erroneous, but inasmuch as it was not excepted to when given, the giving of it cannot now be assigned for error.

It is also assigned for error that the Court improperly sustained the demurrer to the fourth plea. It appears from the

record that when the demurrer was sustained to that plea, an order was entered by the Court that the defendant answer over, and he did answer further, by subsequently filing other pleas. According to the decision of this Court, in the case of Wann *vs.* McGoon, 2 Scam., 74, the filing of the subsequent pleas might well be regarded as a waiver by the defendant of his fourth plea; but whether this be so or not the plea was clearly bad. It stated that part of the lumber, thirty thousand feet, was offered to the plaintiff when demanded, and that the plaintiff was informed and advised that all the balance of said lumber should be furnished as fast as he could raft the same. Had issue been taken upon this plea, one point of inquiry would have been, whether the plaintiff was informed and advised as alleged in the plea—a matter wholly immaterial in the case. The plea, to have been good, after setting forth the offer to furnish part of the lumber, should have averred that the defendant was ready to furnish the balance as fast as the plaintiff could raft it.

The agreement is not to be understood as containing a covenant on the part of Dickhut, that he had the whole one hundred and ten thousand feet of lumber on the bank of the Wisconsin river, at the time of making the contract for rafting the same, but a fair construction of the contract required that the lumber should have been ready as fast as Durrell could raft it. Judgment affirmed.

*Judgment affirmed.*