## Henry Wickham and John Chapman v. The Hyde Park Building and Loan Association.

1. PRACTICE—*Waiving of a Ruling on Demurrer.*—Taking leave to file an additional plea, without electing to stand by the plea to which the demurrer was sustained, is a waiver of all right of exception to the ruling of the court on the demurrer.

2. STATUTE OF FRAUDS—*Must be Specially Pleaded.*—The question as to whether a promise is within the statute of frauds can be raised only by special plea.

3. SAME—*Discharge of the Original Debtor Unnecessary.*—It is not necessary to the validity of a promise made for the benefit of a third person that the original debtor should be discharged.

4. CONSIDERATION—*Agreement for Forbearance.*—An agreement of forbearance to sue is a sufficient consideration to support a promise.

5. PARTIES—*Who May Sue.*—The party for whose benefit a promise is made, may sue for its breach.

Assumpsit, on promises. Tried in the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Finding and judgment for plaintiff; appeal by defendants. Heard in this court at the October term, 1898. Affirmed. Opinion filed January 26, 1899. Rehearing denied March 14, 1899.

FRANK A. MOORE, attorney for appellants.

CHURCH, MCMURDY & SHERMAN, attorneys for appellee.

There is no doubt that promises by a third party to pay a debt for which another is liable, whether such promise be in writing or not, must, like all other promises, be supported by a sufficient consideration. That mere forbearance to sue is a sufficient consideration to support a contract, including contracts to pay another's debt, is a familiar proposition, recognized and applied by numerous authorities. Morgan v. Park Nat. Bank, 44 Ill. App. 582; Belford v. Beatty, 46 Ill. App. 539; Webbe v. Romona Stone Co., 58 Ill. App. 222; Worcester Nat. Bank v. Cheney, 87 Ill. 608.

Where one enters into a simple contract with another for the benefit of a third, such third person may maintain an action for breach, and such contract is not within the statute, citing authorities. Wilson v. Bevans, 58 Ill. 232.

MR. JUSTICE ADAMS delivered the opinion of the court:

This is an appeal from a judgment for $216.67, rendered in favor of appellee in an action of assumpsit by it against appellants. The declaration contained, originally, two special counts and the common counts, but on motion of appellee the common counts were stricken out.

Appellants filed the general issue and a special plea of the statute of frauds, to which latter plea a demurrer was sustained, and leave was given to appellants to file an additional plea, which leave they did not avail of, and the case was tried on the general issue only. The cause was tried by the court, without a jury, by agreement of the parties.

Appellants' counsel, in their argument, say, "Defendants stood by their demurrer," but the record does not so show. On the contrary, the record only shows that, on the sustaining of the demurrer, leave was given to defendants to file an additional plea within five days.

We are of opinion that the taking leave to file an additional plea, without electing to stand by the plea to which the demurrer was sustained, was a waiver of all right of exception to the ruling of the court on the demurrer. Dickhut v. Durrell, 11 Ill. 72, 83.

This, if we are correct in our opinion, eliminates from consideration the question whether the promise is within the statute, because the common counts being stricken from the declaration, that question could only be raised by special plea. Deniston v. Hoagland, 67 Ill. 265; Gordon v. Reynolds, 114 Id. 118.

But inasmuch as counsel for both parties have devoted much of their argument to the question whether the promise sued on is within the statute of frauds, we have fully considered the question, and are clearly of the opinion that it is not, so that the sustaining the demurrer, even though erroneously, did not operate to the prejudice of

appellants.   The material facts of the case are as follows: George D. Turner and Paul Dickinson were partners in the foundry business and owned two plants and the land on which they were situated.   The land where one of the plants was situated was known as the Hoyne avenue property, and that on which the other was situated, as the Hanson Park property.   About October, 1895, they agreed to sever their relation, and divide the property, Turner taking the Hanson Park property, and Dickinson the Hoyne avenue property.   The latter property was incumbered, but the former not.   Turner and Dickinson appear to have been the owners of shares of stock of appellee, the monthly dues on which, payable to appellee, amounted to $216.67.   To secure payment of their monthly dues, George D. Turner, Paul Dickinson and Edward Dickinson, executed to appellee three bonds, in penalties, respectively, of $9,200, $800, and $10,000, and, as collateral security, Paul Dickinson and George D. Turner each transferred to appellee 100 shares of appellee's stock, or 200 shares in all, the bonds being conditioned for the payment of the monthly installments which should become due on the stock, fines, etc.   To further secure payment of the monthly dues or installments payable in respect of the stock, Paul Dickinson executed to appellee two mortgages on part of the Hoyne avenue property, and George D. Turner one mortgage on part of the same property.

Upon the division of the property between Turner and Dickinson, the former agreed with Dickinson that he, Turner, in consideration of the relinquishment by Dickinson of all interest in the Hanson Park property, would pay the amounts secured by the mortgages, in pursuance of which agreement Turner, October 4, 1895, executed to Dickinson a note for $11,000, due six years after date.   It is stated in the note that it is given as collateral security, is not negotiable, and is subject to the terms of a trust deed of even date therewith.   Turner and his wife, October 4, 1895, executed to Robert McMurdy, as trustee, a trust deed of the Hanson Park property, to secure payment of the note above mentioned, reciting that the note was given as collat-

eral security for the payment of the money secured to be paid by the three mortgages heretofore mentioned, and providing that if the appellee should file a bill to foreclose the mortgages, the note should thereupon become due and payable, but that no proceedings should be instituted for the foreclosure of the trust deed within four months from its date, etc.

After the execution of the trust deed Turner conveyed the premises therein described to the Garden City Foundry Company, a corporation, which company became insolvent and made a voluntary assignment in the County Court, and such proceedings were had in the matter of the assignment that the property was advertised for sale by the assignee. In the meantime monthly installments to the amount of $3,965.10, payment of which to appellee was secured by the three mortgages, had fallen due and were unpaid, and appellee had filed a bill to foreclose the mortgages. More than four months from the date of the trust deed had elapsed and Paul Dickinson had, by the terms of the trust deed, the right to file a bill for its foreclosure. While matters stood thus John Chapman, of the partnership firm of Wickham & Chapman, engaged in the foundry business in Springfield, Ohio, came to Chicago for the purpose of establishing in Chicago a branch of his firm's business. He saw the Garden City Foundry plant, situated on the property described in the trust deed, and was desirous of bidding for and purchasing the property at the assignee's sale. Prior to the bidding, however, he called on Dickinson and one of his solicitors for information in respect to the mortgages and the trust deed, and what was due on the mortgages, etc. Appellee claims that the result of these interviews was that Chapman agreed with Dickinson that if he, Dickinson, would not bid for the property at the assignee's sale he, Chapman, in case he should purchase the property, would pay to appellee the amount of installments then in arrear, namely, $3,965.10, and $150 as attorney's fees, and would also pay all future installments as they should become due until the stock matured, not, however, to exceed $11,000, inclusive of all past payments; Dickinson to have

the bill to foreclose the mortgages dismissed, and not to foreclose the trust deed. Dickinson refrained from bidding at this sale; Chapman bid in the name of Wickham & Chapman, and the property was sold to him on his bid, and the assignee executed a deed to Wickham & Chapman. The property was sold subject to the Turner trust deed. Chapman paid $3,965.10, the amount of unpaid dues on the shares of stock, and $150 attorney's fees. Dickinson, on such payment being made, procured the dismissal of the bill to foreclose the mortgages, and did not file a bill to foreclose the trust deed or declare the amount secured by it due, as by its terms he had the legal right to do.

Assuming, for the present, that appellant Chapman agreed as claimed by appellee, we can not concur in the contention of appellants' counsel that the undertaking of appellants was without consideration. We are of opinion that there was ample consideration for their undertaking. They purchased the property subject to the terms of the trust deed, which required the owner of the property to pay all money, the payment of which was secured by the mortgages. By the terms of the mortgages all the money secured to be paid became, on default in the payment of any installment, due and payable at the option of appellee, the mortgagee. The filing of the bill to foreclose the mortgages was an exercise of that right of option, and on its being filed all installments, or monthly dues in respect to the stock, became at once due and payable. In addition to this, four months having elapsed since the date of the Turner trust deed and a bill having been filed to foreclose the mortgages, Dickinson, by the express terms of the trust deed, had the right to foreclose it, in which case he was in a position to obtain a decree for the amount of all installments due or to fall due in respect of the shares of stock not in excess of $11,000, including all payments theretofore made. The benefit then to accrue to Wickham & Chapman from Dickinson's agreement was that they would thereby be able to pay the then future monthly dues or installments on the shares of stock as they should fall due

monthly, instead of being compelled to pay them all at once, and also would save the expense attending a foreclosure of the trust deed.

An agreement of forbearance to sue is a sufficient consideration to support a promise. Browne on Stat. of Frauds, 4th Ed., Sec. 190; Schwarze v. Greenbaum, 58 Ill. App. 221; Cornell v. Gen. Electric Co., 61 Ib. 325; Underwood v. Hossack, 38 Ill. 208; Austin v. Bainter, 50 Id. 308.

And the party for whose benefit the promise is made may sue for its breach. Eddy v. Roberts, 17 Ill. 505; Wilson v. Bevans, 58 Ib. 232; Dean v. Walker, 107 Ib. 540.

The promise in question was for the benefit of appellee. It obtained payment of the installments then due, and further personal security for the payment of future installments without further litigation. It is not, as appellants' counsel contend, necessary to the validity of the promise that the original debtor shall be discharged. Browne on Stat. of Frauds, 4th Ed., Sec. 194; Borschenius v. Canutson, 100 Ill. 82.

The evidence shows that Wickham & Chapman, after payment of the installments in arrear, took possession of the property and operated the plant, made two monthly payments of $216.67 each, and March 20, 1897, closed the plant and moved away the machinery and fixtures.

Counsel for appellants contend that, even though it be held that the promise was made by Chapman, Wickham is not bound. This is hardly consistent with the statement in the argument of appellants' counsel that " Mr. Chapman on the part of himself and partner, came here from Ohio to purchase this property," nor with the facts that the property was purchased for the partnership business of Wickham and Chapman, and in their names, and that the deed ran to them as grantees, and the property was actually used in and for the partnership business.

There is some conflict in the evidence as to whether Chapman promised to pay future installments, but, after considering all the evidence, our conclusion is that the court was fully warranted by it in finding for appellee. It cer-

tainly can not reasonably be said that the finding is manifestly against the weight of the evidence, which would have to be the case to justify a reversal.

The judgment will be affirmed.