**Beltine Chemical & Manufacturing Company, Plaintiff in Error, v. Anton G. Zulfer, Defendant in Error.**

### Gen. No. 14,779.

1. STATUTE OF FRAUDS—*when verbal promise to pay debt of another not within.* The verbal promise to pay the existing debt of another is not within the Statute of Frauds if there is a new consideration to support such a promise, as for instance, forbearance.

2. CONTRACTS—*construction by conduct of parties.* The subsequent construction of their own contract by parties, by their acts, conduct and written communications, is competent where there is a question of construction or interpretation.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded. Opinion filed January 18, 1910.

**Statement by the Court.** At the trial below the court peremptorily instructed the jury for the defendant and a judgment was rendered accordingly upon the verdict returned. To reverse that judgment the plaintiff prosecutes this writ of error. The action is assumpsit. The defense is that the promise sued on was a special promise to answer for the debt of another without any memorandum or note of such promise in writing.

Plaintiff sells laundry machinery and on or about June 11, 1907, had an overdue account of $741.10 against the Mattman Laundry Company, a corporation, which account it was endeavoring to collect. The

defendant was then president of the laundry company and held a chattel mortgage upon its personal property securing the payment of an indebtedness of $6,972.54 owed by the company to him. One Esden was manager of the plaintiff company. On or about the last mentioned date Esden called, according to his testimony, to collect the account and told defendant that if the account were not paid suit would be brought against the laundry company. Zulfer, the defendant, then said: "If you do that I shall have to foreclose my mortgage and you will be wiped out and you will get nothing. Now, I will take that account up and pay it myself, at the rate of $100 per month." To that proposition Esden expressed his willingness to accede and said to defendant that if he would give his notes accordingly "we will take that settlement right now." That mode of arrangement was not satisfactory to defendant, who replied: "No, I will give no notes to any one. I will give you my word of honor that I will pay every dollar of that bill." Esden, however, was not content with this and said he did not think that would be satisfactory to his company. Defendant then remarked: "You have your recourse then. That is all." At that Esden said: "I will take it under advisement" and, closing the interview, defendant added: "If you take my offer that account will be mine. You are not dealing with the Mattman Laundry Company —you are dealing with me; and my word is as good as my bond."

Esden next saw defendant on June 24, 1907. His testimony as to what occurred then is as follows: "I told him that we would accept the proposal—his verbal proposal—that he pay us $100 a month on the first of every month. And he sat down and wrote me a check for $100, on account, making it payable to the Mattman Laundry Company, and handed it to me with the instruction to go over and get Mr. Mattman to countersign it to us, which I did." The amount was credited upon the account. If this evidence tended to make out a promise by defendant, not within the statute of

frauds, the trial court erred in peremptorily instructing the jury in favor of defendant. There was other testimony which a jury might regard as corroborating Esden, but there was none which developed any new or different aspect as to the nature of the promise made.

Payments upon the account were not made promptly thereafter "at the rate of $100 a month;" but three additional payments were made, by the defendant, of $100 each, on August 3, 1907, October 3, 1907, and on January 13, 1908, respectively. While the first check, apparently, was made payable to the Mattman Laundry Company and endorsed by it, the other payments were all made by checks of the defendant, payable directly to plaintiff. After the receipt of June 24, 1907, which was made to the laundry company, the receipts given were made directly to the defendant.

There were some written communications between plaintiff and defendant which the learned trial judge did not regard as admissible. These communications were as follows: One dated August 2, 1907, viz.:

"MR. A. G. ZULFER,
163 S. Water St., Chicago.
Dear Sir:—Kindly let bearer have check for $100 on account of Mattman Laundry Company, as per agreement.              Yours Respectfully,
      THE BELTINE CHEMICAL & MANUFACTURING CO.,
             Per John B. Esden."

Below which was a reply as follows:
"Please send receipt to me, and oblige
             Very truly,
                A. G. ZULFER."

Another was as follows:
              "August 30, '07.
"MR. A. G. ZULFER,
163 So. Water St., Chicago, Ills.
Dear Sir:—Kindly oblige us with your check for this

and last month as per agreement on Mattman Laundry
Co. account.              Yours Respectfully,
          THE BELTINE CHEMICAL & MANUFACTURING Co.
                         R.''

And a third:
                                  ''CHICAGO, ILL., Sept. 5.
THE BELTINE CHEMICAL Co.,
      Kinzie & Sangamon Sts.
      Gentlemen:—Your letter of 1st was received some
few days ago.  The writer has just got back from New
York, otherwise would have answered your letter
sooner.  I will have to ask you to pass me up this
month as my drafts are coming in faster than I can
get money to pay them; but will not forget you the
first of Oct.              Very truly,
                              A. G. ZULFER.''

      The last part of September or first part of October,
1907, the laundry business was sold.  No payment, so
far as the record shows, was made upon the account by
the laundry company after June, 1907, and none was
made by defendant after January 13, 1908.

      ROBERT S. ILES and ROBERT D. MARTIN, for plaintiff
in error.

      ADLER, LEDERER & SCHOENBRUN, for defendant in
error.

      MR. PRESIDING JUSTICE CHYTRAUS delivered the opin-
ion of the court.
      The sole question and entire controversy in this case
is whether the promise of Zulfer, the defendant, to pay
to the manufacturing company, the plaintiff, the ac-
count due the latter from the laundry company is an
original or collateral promise.  The account was an ex-
isting indebtedness of the laundry company when the
promise to pay it was made by defendant.  The prom-
ise was not made in writing.  An agreement of for-
bearance to sue is a sufficient consideration to support

a promise. Wickham v. Hyde Park, etc., Ass'n, 80 Ill. App. 523, 528. And an agreement to forbear may, under proper instructions, be inferred by the jury from the facts and circumstances and the acts and declarations of the parties. Webbe v. Romona O. S. Co., 58 Ill. App. 222, 227. Clearly the jury would have been justified in finding, upon the evidence adduced, that upon defendant's promise plaintiff impliedly, in the case at bar, agreed to and did refrain from bringing immediate suit against the laundry company and accepted defendant's proposition to pay the laundry company's account in monthly installments of $100 each. From the evidence of what was said and done and of the manner and times of payment of the account, an implication or inference is fairly deducible that plaintiff agreed with defendant upon the payment of the amount of the account in installments and not to bring suit for recovery of the amount so long as defendant should not default. There was evidence, therefore, of a new consideration moving from plaintiff to defendant and a consideration upon which the promise defendant made to pay plaintiff the account of the laundry company could be sustained. As to the adequacy of the consideration there is no question made nor is there room for any question. Holding a chattel mortgage upon the property of the laundry company, defendant was naturally, under the circumstances here appearing, desirous that the laundry company's plant should be sold as a going concern rather than at a chattel mortgage sale. His statements that were suit brought for the account he would foreclose and plaintiff's claim would then "be wiped out," indicates a scantness of security.

A condition of scantness of security would explain why it might be desirable, so far as defendant was concerned, that the business should be nursed along so as to be sold as a going concern and disclose what was the main, if not the only, purpose and object of defendant in making the promise. An eminent text writer, concerning promises such as the one we are consider-

ing, has said: "It may indeed be stated as a general rule, that wherever the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another." 3 Pars. Cont. (6th Ed.) 24.

It is contended that when a promise is made to pay an existing debt of another, although there be a new consideration moving from the promisee to the new promisor, nevertheless, unless the promise is made in writing, it is within the statute of frauds and void. In other words, the contention is that all promises, not in writing, to pay an existing debt of another contravene the statute and are utterly invalid. There are decisions, at least statements in opinions, rendered in the courts of Illinois which sustain the contention, but such is not the law in Illinois.

In Borchsenius v. Canutson, 100 Ill. 82, 92-3, there was a new consideration for a promise to pay the debt of another without any written evidence of such promise and the statute of frauds was held not to be applicable. It is also to be observed that in that case the original indebtedness was not cancelled but continued to exist.

In Power v. Rankin, 114 Ill. 52, a promise upon a new consideration to pay an existing debt of another was held valid, notwithstanding the statute of frauds, although the promise was not in writing. It was there said (p. 55): "If there is a new consideration moving from the promisee to the promisor, then the superadded consideration makes it a new agreement, which is not within the statute" and, further, concerning a promise upon a new consideration: "A promise of this character, under the rule established by the authorities, is an original undertaking, and in no manner affected by the statute of frauds." In that case there was no cancellation of the original indebtedness or any part thereof.

To the same effect: Kee v. Cahill, 86 Ill. App. 561; Graham v. Mason, 17 Ill. App. 399.

In Wickham v. Hyde Park, etc., Assn., *ib.*, at page 528 it was held: "It is not, as appellant's counsel contend, necessary to the validity of the promise that the original debtor shall be discharged."

The language used by the defendant in the case at bar indicates he intended to make an original and independent promise to the plaintiff. The language defendant used is not such as to suggest that he intended to make a promise collateral to any promise or liability of the laundry company. In testing whether promises, under circumstances such as those here involved, are original or collateral, Professor Parsons has laid down the rule that "It must be remembered, that the expressions used by the parties are the first and the most direct evidence of their intention." 3 Pars. Cont. (6th Ed.) 21.

Defendant herein contends that Eddy v. Roberts, 17 Ill. 504, 507, lays down the rule that: "The collateral promise must not only be founded on a new consideration but be in writing," and that the decision in that case controls the case at bar. That case has been so frequently cited, particularly in the Appellate Court reports of this state, that it requires to be considered with more than usual attention. Appellants therein, Eddy *et al.*, brought the suit against Roberts to recover upon his promise to pay a debt of one Williams. That debt existed at the time the promise was made. It was held the declaration was insufficient for a recovery and the cause was remanded with leave to the plaintiffs to amend their declaration. The facts are stated to be that Williams, who had been engaged in the wood-cutting business, had had in his employ workmen who, under an arrangement between Williams and the plaintiffs, had obtained their pay in goods from plaintiffs' store, and the goods were charged to Williams. At a time when Williams was indebted to plaintiffs Roberts bought him out (p. *506) and, as part of the transaction, agreed with Williams to pay

his debt to plaintiffs. Then Roberts requested plaint-
iffs to let his hands have goods, to be charged to him,
from plaintiffs' store, but plaintiffs refused to enter
into such an arrangement unless the debt of Williams
were first paid. Roberts then promised that if plaint-
iffs would furnish goods to the hands he would pay
not only for the goods furnished but also the indebted-
ness of Williams. Plaintiffs furnished goods but as
Williams' debt was not paid suit was brought.

There was a declaration in the suit consisting of
three special counts and the common counts for goods
sold and delivered. The court held there could be no
recovery under the common counts and that the first
two counts were not proven. The third count alleged
(p. 505) that one Williams was indebted to plaintiffs;
that in consideration plaintiffs would furnish goods to
employes of defendant and charge the same to defend-
ant the defendant promised to pay for such goods and
also to pay the plaintiffs said indebtedness of the said
Williams; that plaintiffs did furnish the said goods,
etc. This count the Supreme Court held was substan-
tially proved and that the question arose whether the
verbal promise to pay the debt of Williams, therein
stated, was binding in law. In considering this ques-
tion the court said (p. 507) that when one is primary
or principal debtor and the relation of debtor and
creditor remains unchanged, both as to the right and
the remedy, and no trust is created by the transaction
out of which a new party's promise arises, then such
promise is in its nature collateral and not original.
The court, upon the facts and state of pleadings in-
volved, announced these principles of law that:
"Where the principal and the collateral contracts are
made at the same time, the credit given, or considera-
tion passing, between the principal parties may be suf-
ficient to sustain the collateral promise, but such prom-
ise must be in writing. Where the collateral promise
is subsequent to the creation of the principal contract
or debt, the collateral promise must not only be founded
on a new consideration but be in writing." And the

court held that in the case then before the court the plaintiffs might recover upon the undertaking involved, although not in writing, by declaring "on the special contract as made *to* the plaintiffs;" but that there could be no recovery upon the third or any other count in the declaration filed.

In view of the later decisions of our Supreme Court already referred to and other decisions, we cannot accede to the correctness of the proposition that the principles of law announced in and the holding of that case are now the law of Illinois. Neither can we agree that in the first of the principles of law above stated to have been announced there is any collateral contract involved.

With reference to the case of Chicago Heights Lumber Company v. Miller, 219 Ill. 79, cited on behalf of defendant, it is sufficient to say that it is not in point, for in that case there is no pretense of a consideration moving to Miller, the promisor, from the lumber company, the promisee, for the promise to pay the debt of Frink. Upon no conceivable theory could Miller's promise be an original valid promise.

The case of Resseter v. Waterman, 151 Ill. 169, to which we are referred, we do not find to be in point. Resseter brought suit against Waterman because, as alleged, Waterman had induced Resseter to become surety for John and Ole Severson by promising Resseter to obtain from Ole Severson a chattel mortgage to secure the same and also another indebtedness upon which Resseter was previously surety. Waterman obtained no such chattel mortgage and Resseter sustained a loss. In reality there was no promise to answer for the debt, default or miscarriage of another charged against Waterman or involved in the case.

The remark "Undoubtedly, under the Statute of Frauds the promise to pay the debt of another, after the same is incurred, is void, unless made upon a consideration and reduced to writing" in the opinion in the case of Lusk v. Throop, 189 Ill. 127, is an *obiter dictum.*

There was no promise made *after* the debt of another had been incurred involved in that case.

The statement in Home Nat'l Bank v. Waterman, 30 Ill. App. 535, 549, that the original debt must be given up in order that the new promisor should become principal in an original promise is inconsistent with Borchsenius v. Canutson, *ib.*, and Power v. Rankin, *ib.*, and the contrary is specifically held in Kee v. Cahill, 86 Ill. App. 561.

The written communications between the parties were competent evidence as bearing upon the interpretation of the contract between Zulfer and the plaintiff. Subsequent construction of their own contracts by parties, by their acts and conduct and written communications, is competent where there is a question of construction or interpretation. If, subsequent to the conversation in question, plaintiff in conduct and letters treated defendant as having made an original promise, that circumstance would have a probative value favorable to plaintiff, while if the plaintiff treated defendant as having made a collateral promise, that circumstance would have a probative value favorable to defendant. A similar statement may be made as to the conduct and letters of the defendant having a probative value.

According to the later decisions of the Supreme Court of this state the learned trial judge erred in directing a verdict for the defendant at the close of the plaintiff's case. The judgment rendered upon that verdict must be reversed and the cause remanded.

*Reversed and remanded.*