## DOWLING v. EXCHANGE BANK OF BOSTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 349. Argued April 29, 1892. — Decided May 16, 1892.

An agreement of partnership between three partners for carrying on the business of sawing lumber, etc., in a village in Michigan, which provided that no part of the capital should be diverted or used by either partner otherwise than in the business, two of the partners to secure sawing for the mill and superintend the financial part of the business, the third partner to have the management of the work at the mill, did not create a partnership, each member of which had, under the settled rules of commercial law, and as between the firm and those dealing with it, authority to give negotiable paper in its name; and, one partner, without the knowledge of his copartners, having put the firm name to notes which were discounted by a bank in Boston, but not for the benefit of the firm, the other partners were entitled, in an action by the bank to recover on the notes, to have it submitted to the jury whether, under the circumstances, they were estopped to dispute the authority of their partner to make them and to put them in circulation.

THE court stated the case as follows:

Edward P. Ferry, of Grand Haven, Michigan, and George E. Dowling and Frank H. White, of Montague, in the same State, entered, February 1, 1873, into written articles of copartnership, "for the purpose of carrying on the business of sawing lumber, pickets and laths at the said village of Montague, in the steam saw mill lately there erected," the name of the firm being F. H. White & Co., and the partnership to continue for the full term of five years, unless sooner dissolved by agreement. Of the capital of the firm Ferry contributed one-half, and Dowling and White one-fourth each.

By the written terms of the partnership, no part of the capital was to be diverted or used by either partner, otherwise than in the business; the profits and losses were to be shared according to their respective interests; Ferry and Dowling were to have the care and charge of securing the sawing for the mill, the supervision of the financial part of the business and of the firm's books to be divided between them, as they might agree

without charge for their services; and White was to have full management of the work of sawing, of hiring and discharging of men and fixing their wages, keeping double entry books, which should be open at any time for the inspection of the partners, and receiving for his services one thousand dollars, to be paid by the firm. It was further provided that the books of the firm should be closed as of January 31, in each year, the profits then to be ascertained and passed to the credit of the respective partners, and applied in a specified way.

At the date of the several transactions out of which this litigation arose there was a firm, Ferry & Bro., at Grand Haven, Michigan, engaged in business as manufacturers of and dealers in lumber and shingles. It was composed of Thomas W. Ferry and Edward P. Ferry.

The present action involved the question of the liability of F. H. White & Co. upon three promissory notes, bearing date, respectively, Montague, Michigan, October 17, 1882, November 27, 1882, and January 15, 1883, and for the respective sums of $5288.75, $5100.73 and $5391.90, and payable, each, four months after date, to the order of Ferry & Bro., "at the National Exchange Bank, Boston, Mass., value received." Each note was endorsed by Thomas W. Ferry, in the name of Ferry & Bro., and was sold by him, acting in the name of his firm, to that bank. Neither White nor Dowling — whose firm continued in business under the above articles of partnership until May 31, 1883 — had any knowledge of the existence of these notes until after their respective maturities, nor until shortly before the commencement of this action. Neither authorized the notes to be given. They were gotten up by Thomas W. Ferry, with the aid of Edward P. Ferry and one Thompson, the bookkeeper of Ferry & Bro., the latter acting under the direction of Thomas W. Ferry. The proceeds were used for the benefit of Thomas W. Ferry, or of his firm. The firm name of F. H. White & Co. to each note was signed by Edward P. Ferry, who did not communicate to White and Dowling that he had done so.

Separate actions having been brought by the bank upon the notes, they were, by consent, consolidated. Before the order

of consolidation was made Dowling filed in each action his affidavit, stating that "on the 17th day of October, 1882, he was, and still is, a member of the copartnership firm of F. H. White & Co., of Montague, Michigan; that said firm was at said time, and still is, composed of Edward P. Ferry, Frank H. White, and this deponent as copartners;" that "he never executed the promissory note, a copy of which was served upon him with the plaintiff's declaration;" that "the signature thereto is not in the handwriting of this deponent; and that said promissory note was not executed by any person having authority to bind this deponent or to bind the said defendants, Edward P. Ferry, Frank H. White, and this deponent jointly upon said promissory note."

A verdict was returned in favor of the plaintiff for $17,791.45, the court saying to the jury: "Regretting very much that these defendants White and Dowling, who alone make defence here, are in such a situation that they must suffer from the wrong-doing of their associate, the court is unable to relieve them without violating principles of law which are essential to the security of mercantile business, and violating also the rights of parties innocent of the wrong. As there is, in the opinion of the court, no question of fact about which there is any conflict in the evidence, the court holds that, giving effect to the testimony, the plaintiff is entitled to a verdict, and you are instructed to find accordingly against all the defendants." The opinion which preceded this charge is reported in 30 Fed. Rep. 412.

Judgment having been rendered upon the verdict, a severance was duly had between the defendants, so as to authorize a writ of error in the name of Dowling alone.

*Mr. Michael Brown* (with whom was *Mr. J. C. Fitzgerald* on the brief) for plaintiff in error.

*Mr. Mark Norris* (with whom was *Mr. Lyman D. Norris* on the brief) for defendant in error.

To sustain the defence made it must appear that F. H. White & Co. was a co-partnership of such a character that the

members thereof had no authority, under any circumstances, to make commercial paper.

If they had power to make negotiable paper for the firm's use, then the paper in suit is good in this bank's hands, it being beyond dispute a *bona fide* purchaser for value before maturity, and without notice of any defect or irregularity in the issue of the notes.

To sustain the defence in this case, these notes must have been void at issue, for lack of power to make them — not voidable — for fraud. It is impossible to say so on this record.

In cases where partnerships are engaged in buying and selling it is settled that the law implies authority to make commercial paper, and that paper made by one co-partner in such firms though not used in the firm business is binding on the firm, in the hands of a good faith holder for value before maturity. *Wagner* v. *Simmons*, 61 Alabama, 143; *Prince* v. *Crawford*, 50 Mississippi, 344, 358; *Winship* v. *Bank of the United States*, 5 Pet. 529; *Kimbro* v. *Bullitt*, 22 How. 256; *Walworth* v. *Henderson*, 9 La. Ann. 339; *State Bank* v. *Noyes*, 62 N. H. 35; *Hoskinson* v. *Elliot*, 62 Penn. St. 393; *Smith* v. *Collins*, 115 Mass. 388.

But in cases where the firm is not engaged in buying and selling, the question whether partners have the authority to make commercial paper is a question of fact, and such power will be held to exist on proof: (1) Of express authority; or (2) Of the necessity of such power to the successful conduct of the business; or (3) Of the usage of similar firms engaged in the same business; or (4) Of the usage of the particular firm. *Prince* v. *Crawford*, 50 Mississippi, 344; *Smith* v. *Sloan*, 37 Wisconsin, 285; *Gray* v. *Ward*, 18 Illinois, 32; *State Bank* v. *Noyes*, 62 N. H. 35; *Irwin* v. *Williar*, 110 U. S. 499.

The evidence as to the character of this partnership, the scope of its business and the actual course and conduct thereof came wholly from defendants below and was in no way contradicted or disputed. It therefore became the duty of the court to direct a verdict. *Orleans* v. *Platt*, 99 U. S. 676; *Improvement Co.* v. *Munson*, 14 Wall. 442; *Walbrun* v. *Bab-*

*bitt*, 16 Wall. 577; *Arthur* v. *Morgan*, 112 U. S. 495; *County of Macon* v. *Shores*, 97 U. S. 272; *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Railroad Co.* v. *Jones*, 95 U. S. 439; *Pleasants* v. *Fant*, 22 Wall. 110.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

It is not disputed that the execution by Edward P. Ferry, in the name of F. H. White & Co., of the notes in suit, was without express authority of his partners, and that neither of the notes was given or used in the business of that firm. The primary question, therefore, is, whether, for the protection of the plaintiff a *bona fide* purchaser for value, it will be conclusively implied, as matter of law, from the nature or course of the firm's business, that Edward P. Ferry had authority from his partners to make those notes or either of them.

Mr. Justice Clifford, speaking for the court in *Kimbro* v. *Bullitt*, 22 How. 256, 268, said that "wherever the business, according to the usual mode of conducting it, imports, in its nature, the necessity of buying and selling, the firm is then properly regarded as a trading partnership, and is invested with all the powers and subject to all the obligations incident to that relation," citing, among other cases, *Winship* v. *Bank of United States*, 5 Pet. 529, 561. Mr. Justice Story said that the doctrine that each partner may bind the firm by bills of exchange, promissory notes and other negotiable instruments is generally limited to partnerships in trade and commerce, and does not apply to other partnerships unless it is the common custom or usage of such business to bind the firm by negotiable instruments, or it is necessary for the due transaction thereof. Story on Partnership, § 102, *a*.

In *Irwin* v. *Williar*, 110 U. S. 499, 505, Mr. Justice Matthews, speaking for the court, said: "The liability of one partner, for acts and contracts done and made by his copartners, without his actual knowledge or assent, is a question of agency. If the authority is denied by the actual agreement between the partners, with notice to the party who claims under it, there is

no partnership obligation.  If the contract of partnership is silent, or the party with whom the dealing has taken place has no notice of its limitations, the authority for each transaction may be implied from the nature of the business according to the ordinary and usual course in which it is carried on by those engaged in it in the locality which is its seat, or as reasonably necessary or fit for its successful prosecution.  If it cannot be found in that, it may still be inferred from the actual though exceptional course and conduct of the business of the partnership itself, as personally carried on with the knowledge, actual or presumed, of the partners sought to be charged."  Again: "What the nature of that business in each case is, what is necessary and proper to its successful prosecution, what is involved in the usual and ordinary course of its management by those engaged in it, at the place and time where it is carried on, are all questions of fact to be decided by the jury, from a consideration of all the circumstances which, singly or in combination, affect its character or determine its peculiarities, and from them all, giving to each its due weight, it is its province to ascertain and say whether the transaction in question is one which those dealing with the firm had reason to believe was authorized by all its members.  The difficulty and duty of drawing the inference suitable to each case from all its circumstances cannot be avoided or supplied by affixing or ascribing to the business some general name, and deducing from that, as a matter of law, the rights of the public and the duties of the partners."

It is very clear that the articles of agreement between Ferry, White and Dowling did not create a partnership, each member of which had, under the settled rules of commercial law, and as between the firm and those dealing with it, authority to give negotiable paper in its name.  The firm was of the class denominated in many adjudged cases as non-trading or non-commercial firms, the members of which could not be held, as matter of law, and by reason of the nature of the partnership business, to have authority to execute negotiable instruments in the name of the firm.

We quite agree with the learned judge who presided at the trial, that the liability of a partnership upon negotiable instru-

ments executed by one partner in the name of the firm, exists not only where the firm is a trading or commercial partnership, but "where the actual course of business pursued adopts the practice of issuing the mercantile paper of the firm to accommodate its necessities or convenience whenever the occasions occur." But the difficulty in this case is that the jury were not permitted to determine, from a consideration of all the circumstances of the case, what, in view of the admitted nature of the business of F. H. White & Co., was necessary and proper to its successful operation, what was involved in the usual and ordinary course of its management by those engaged in it, or what should be inferred from the actual course and conduct of the partnership, so far as it was known, or ought reasonably to have been known, to the parties sought to be charged with liability on the notes in suit. We do not deem it necessary to make a detailed statement of the numerous facts disclosed by the evidence, or to suggest what inference might be drawn from them. It is sufficient to say that the issue as to whether the defendants were estopped to dispute the authority of Edward P. Ferry to make the notes in suit, in the name of F. H. White & Co., was one peculiarly for the jury, under all the facts indicating the nature, necessities, and course of business of the firm, and under proper instructions from the court as to the legal principles by which they should be guided in determining the case.

We think the court erred in holding, as matter of law, that the jury were not at liberty, under any view of the facts, to find for the defendants. It seems to us that a verdict in their favor would not have been so palpably against the evidence as to have made it the duty of the court to set it aside and grant a new trial.

*The judgment is reversed as to the defendant Dowling, who alone prosecutes this writ of error, with directions to grant him a new trial.*