## I. N. CHASE *v.* H. S. SOULE.

January Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and STAFFORD, JJ.

Opinion filed April 29, 1904.

*Contract of, Indemnity—Consideration—Common Owners of Personalty—Rights of Co-Owners.*

The plaintiff and defendant become common owners of a stallion when the former sells the latter a half interest therein, and it is agreed that the plaintiff shall have the possession and management of the property; that each is to share equally in all expenses and in the profits and losses; and that when either is dissatisfied the plaintiff is to propose what he will give for the defendant's interest or take for his own.

One of two co-owners of personal property cannot sell the other's interest therein without his consent.

Although the plaintiff and the defendant were co-owners of a horse, the fact that the defendant requested the plaintiff, who was anxious to accept an offer to purchase the animal, to refuse the offer, and when asked on cross-examination if plaintiff had the

right to dispose of the horse, said, "I suppose so," tends to show that at the time of said offer he understood that the plaintiff had the right to sell the horse.

SPECIAL ASSUMPSIT on a contract of indemnity. Pleas, the general issue, and declaration in offset. Trial by jury at the March Term, 1901, Chittenden County, *Start,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

This case was argued in the Supreme Court at the May Term, 1903. At the January Term, 1904, upon an order to that effect, it was again argued upon the question, "was it claimed by the plaintiff, at the trial, that the defendant gave him authority to sell the horse, or that there was any agreement between them to that effect?"

At the time defendant purchased the half interest in the stallion and took a bill of sale thereof, the parties made and executed the following agreement:

"It is further understood and agreed that I, H. S. Soule, shall pay for Marion Wilkes' keeping while he is standing in the stud at I. N. Chase's stable, one-half of five dollars as my share, and one-half of other necessary expenses and while he is campaigning I shall share equally the expense, and share equally the profits or loss from service fees and what is earned, if any, while he is campaigning, and when either is dissatisfied, said I. N. Chase shall say what he will give or take for the other's interest."

The opinion states the other facts.

*W. H. Fairchild* and *Brigham & Start* for the defendant.

The title to this property was a tenancy in common. The parties had formed a non-trading partnership. The plaintiff could not sell the defendant's interest in the horse without

his consent.   Hence there was no consideration for the defendant's promise of indemnity.   *Goell* v. *Morse,* 126 Mass. 480; *Walker's Admr.* v. *Walker's Est.,* 66 Vt. 285; *Dowling* v. *Ex. Banks,* 145 U. S. 512; *Smith* v. *Sloan,* 19 Am. Rep. 757; *Fudge* v. *Bashnell,* 26 Am. Rep. 183; *Welch* v. *Clark,* 12 Vt. 681; *Irwin* v. *Williar,* 110 U. S. 497; *Ham* v. *Newton City Bk.,* 32 Kan. 522; *Blaker* v. *Sands,* 29 Kan. 551; *McNair* v. *Wilcox,* 121 Pa. 437, 126 Mass. 470.

A promise to do what one is bound by law to do is *nudum pactum.*   20 Mass. 93; 64 Vt. 387; 40 Vt. 25; 67 Am. St. 271; 77 Am. Dec. 685; 127 Mass. 31; 21 Atl. 749.

*V. A. Bullard* and *R. E. Brown* for the plaintiff.

The contract in question is one of indemnity.   *Beawon* v. *Russell,* 20 Vt. 205; *Carr* v. *Whaley,* 23 Ala. 821.

The consideration of defendant's promise was that plaintiff should not accept the offer for the horse; that he should not insist that the horse be sold; that the defendant should have the right to sell the horse when he saw fit; the plaintiff gave up his right to terminate the horse contract by an offer to give or take.

The promises between the plaintiff and defendant were mutual and concurrent, the plaintiff to refrain from selling the horse or insisting that he be sold, the defendant to save the plaintiff from loss for so doing.   Mutual promises are sufficient consideration for each other.   *Sinclaire* v. *Blanchard,* 17 Vt. 464; *Black* v. *Peck,* 11 Vt. 484; *Hildreth* v. *Academy,* 29 N. H. 227; *Perry* v. *Blackmore,* 32 Vt. 7; *Weilds* v. *Nichols,* 17 Pick. 538.

TYLER, J.   In February, 1895, the defendant purchased of the plaintiff, for five hundred dollars, a half interest in a

trotting stallion then owned by the plaintiff and of which, by the mutual understanding of the parties, the plaintiff was to have the possession and management. A bill of sale was given by the plaintiff to the defendant, and at the same time and as part of the transaction, the parties made and signed an agreement in respect to paying the expenses of keeping the horse, which agreement contained a clause providing that if either party should become dissatisfied the plaintiff should propose what sum he would give for the defendant's interest or take for his own.

In the following August the plaintiff claimed to have received an offer of six thousand dollars for the horse which he desired to accept. The defendant was opposed to the sale, wished to hold the horse for a higher price, and verbally guaranteed that the plaintiff should suffer no loss if he refused the offer. On the same occasion the defendant loaned the plaintiff sixteen hundred dollars, the latter being in want of money and having expected to obtain it from a sale of the horse. In consideration of the guaranty the plaintiff refused the offer. In February, 1896, at the plaintiff's suggestion the defendant drew up and signed a writing as evidence of the loan and guaranty, and the defendant then, as a part of that transaction, cancelled the stipulation in the former writing in respect to the offer to "give or take." The parties continued common owners of the horse until January, 1900, when, having become nearly worthless, he was sold at auction by the plaintiff for eighty dollars.

The plaintiff sues upon the verbal guaranty, alleging in his declaration the common ownership, the offer of six thousand dollars, his authority and right to sell for himself and the defendant, the defendant's request that the offer be rejected, the guaranty, the rejection of the offer at the defend-

ant's request and in reliance upon the guaranty, and the consequent loss and damage.

The defense was that the professed offer was fictitious and that the guaranty was obtained by fraud. This was the only question of fact submitted to the jury in relation to the guaranty.

The defendant submitted four requests to the court for instructions to the jury, but only the following one need be considered here:

"That the plaintiff had no legal right to sell the horse, and that his agreeing not to do what he had no legal right to do was no consideration for an undertaking or promise on the part of the defendant."

The case comes here upon the defendant's exceptions to the refusal of the court to direct a verdict and to comply with his requests to charge.

The plaintiff's foregoing the offer of six thousand dollars for the horse was a sufficient consideration for the defendant's guaranty, if the plaintiff, from the nature of the ownership, had a legal right to make the sale, or if the defendant, at some time during the ownership, had given him such authority.

The parties were common owners of the horse, and neither could sell his co-tenant's interest without the other's consent. *Goell* v. *Morse,* 126 Mass. 480; *Walker's Admr.* v. *Walker,* 66 Vt. 285, 29 Atl. 146; *Irwin* v. *Williar,* 110 U. S. 499; *Dowling* v. *Banks,* 145 U. S. 512. The guaranty, therefore, was without a consideration resting upon the ground of a legal right in the plaintiff to make the sale because of the common ownership. It was a guaranty to the plaintiff against loss for refusing an offer that he had no legal right to accept. The plaintiff does not controvert this rule of law,

but contends that the facts in the case show that the defendant gave him authority.

It was competent for the plaintiff to prove, under the allegations in the declaration, that the defendant, at some time during the common ownership, gave him authority to sell the horse. Upon an examination of the record we cannot say that conferred authority was not claimed by the plaintiff, nor that there was no evidence to support such claim, though neither party testified directly to that fact. The fact that the defendant requested the plaintiff not to sell the horse and gave him a guaranty against loss if he would refuse the offer of six thousand dollars tended to show that he then understood that the plaintiff had a right to make the sale, either because he had given him authority, or that such authority was incident to the common ownership. Presumably he would not have made the request and given the guaranty if he had understood that the plaintiff had no right to make the sale. His action was consistent with the idea of authority acquired by the plaintiff by law or by the defendant's consent. The defendant's answer, "I suppose so," to the cross-question, whether Chase had the right to enter the horse for races or dispose of him, also tended in the same direction.

The request to charge was not sound because the evidence referred to was in the case and tended to show that the plaintiff derived authority from the defendant to make the sale, and the record does not show that it was not so claimed in argument. For the same reason the court could not have complied with the defendant's motion for a verdict.

*Judgment affirmed.*