## Charles E. Peters, Defendant in Error, v. Levi A. Raven, Plaintiff in Error.

### Gen. No. 15,241.

1. STATUTE OF FRAUDS—*how question whether promise is original or collateral determined.* Whether a promise is original or collateral, where a dispute exists as to the terms of the promise, is a question to be determined by the jury from all the circumstances in the case and the evidence under the instructions of the court.

2. STATUTE OF FRAUDS—*when promise original.* If a person claimed to have made the promise to pay the debt of another is interested in the business of such other and primarily to protect his own interests made such promise, it is an original undertaking, and it is not necessary to its validity that the party to whom the promise was made and who sold and delivered the merchandise should have intended to hold the promisor alone responsible.

Error to the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, JR., Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded. Opinion filed December 2, 1910.

SAMUEL B. KING and JULE F. BROWER, for plaintiff in error.

JOHN J. SONSTEBY, for defendant in error; WILLIAM MOFFETT, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

Charles E. Peters, defendant in error, recovered a judgment for $174.75 against Levi A. Raven on an account for merchandise sold and delivered to one Grage. The position of defendant in error is that on May 1, 1906, Grage owed him a balance of account amounting to $186.25; that on that date he presented the account to Grage, who sent him to Raven with the account for payment. Peters then went to Raven with the statement of account and informed him that Grage had sent him and directed him to present to Raven all his bills and to mail to Raven all statements every month.

Raven then looked at the statement and asked Peters to call at a later date. On May 22, 1906, Peters again called on Raven, who then agreed to pay all bills for goods delivered to Grage, and paid Peters $50 on the account. At the time of this payment Peters asked Raven "if he intended to pay these bills hereafter, and he said yes, but he said he wanted to keep these bills down as much as possible, and don't give any more goods than what they really needed." Peters then said: "The best thing you can do is to stop sending work over there and pay the bills up." Raven answered: "Go along and go to work and we will do the best we can, and I will give you a check each month, a little at a time, and do the best we can." Thereafter, and until May 1, 1908, Peters continued to deliver goods to Grage and do repair work for him charging the same to Grage, and during that period Raven paid Peters various amounts aggregating $335 without directing the application of the payments. These payments were credited by Peters to the account of Grage. During this period of two years Peters presented to Raven itemized statements each month showing the balance on the entire account on the first of the preceding month. In May, 1908, Raven refused to pay the bills, and the action was brought to recover the amount of the bills then unpaid.

Raven in his testimony denied the material part of the conversation testified to by Peters. It appears that he held a mortgage for $4,000 on the property of Grage.

It will be seen that there is evidence in the record (controverted by Raven) tending to prove that Raven promised to pay for goods and work which Peters might thereafter deliver to Grage or do for him, and that if such promise was made there was a consideration therefor.

Whether or not Raven's promise, if made, was original or collateral was a question to be determined by

the jury from all the circumstances of the case and the evidence, and under the instructions of the court. Lusk v. Throop *supra*. It was important, therefore, in view of the radical conflict in the evidence that this question be properly submitted to the jury.

The court instructed the jury:

"If you believe from the evidence that the defendant, Raven, promised the plaintiff that he would pay the plaintiff for goods, wares, merchandise, labor and material as he might thereafter furnish August Grage, and that the plaintiff relied alone upon such promise, and that in pursuance of such promise and relying upon such promise, furnished and supplied goods, wares, merchandise and labor to said Grage, intending to hold Raven alone responsible for such goods, wares, merchandise and labor, then you will find for the plaintiff.

"If you believe from the evidence that the plaintiff did not rely alone upon the promise of Raven, if any such was made, to pay for goods, wares, merchandise and labor furnished Grage subsequent to such promise, if any there was, then you must find for the defendant."

In our opinion the instruction is clearly erroneous as applied to the facts shown by the evidence. If, by reason of holding a mortgage upon Grage's property of $4,000 or otherwise, Raven was interested in the business and primarily to protect his own interest promised to pay for any goods sold, delivered to, or repairs made for, Grage thereafter, it was an original undertaking and not merely a collateral promise to pay the debt of Grage, and it would not be necessary to its validity that Peters in selling the goods and making the repairs should have intended to hold Raven alone responsible for such goods and labor. A promise so made by Raven would be none the less an original undertaking because Grage also became indebted. Browne on Stat. of Frauds, 4th Ed., sec. 194; Borchsenius v. Canutson, 100 Ill. 82; Wickham v. Hyde Park B. & L. Assn., 80 Ill. App. 523; Kee v. Cahill, 86 Ill. App. 561.

The instruction of the court is not only erroneous but as is frequently the case where an erroneous instruction is given, it presents to the jury an immaterial issue and misleads them. There was a sharp conflict in the testimony as to the alleged promise and undertaking. It cannot be reconciled. When such a conflict exists on the main issue in the case it is important that the jury be accurately instructed as to the law applicable to the facts shown by the evidence. The real question in the case was not whether Peters relied alone upon the promise of Raven to pay for the goods and labor furnished Grage intending to hold Raven alone responsible. The issue was whether or not Raven for a consideration made the alleged promise, and if the promise was made whether it was made primarily in his interest. Beltine Chemical & M'f'g. Co. v. Zulfer, 152 Ill. App. 308. This issue was not submitted by the court's instructions. From the record it does not appear that the jury were required to determine the main issue of fact in the case, and there must therefore be another trial.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*