**MATANUSKA VALLEY BANK, a corporation, Appellant,**

v.

**Irene ARNOLD and Willard Davis, individually, and as Copartners, doing business as Davis Construction Company, Appellees.**

No. 14229.

United States Court of Appeals
Ninth Circuit.

June 20, 1955.

E. L. Arnell, Anchorage, Alaska, for appellant.

Juliana D. Wilson, Anchorage, Alaska, for appellees.

Before DENMAN, Chief Judge, and ORR and CHAMBERS, Circuit Judges.

ORR, Circuit Judge.

Appellant, plaintiff in the lower court, sued appellees, defendants in the lower court, to recover payment of three notes purported to have been executed on behalf of a partnership consisting of appellees, Mrs. Irene Arnold and Willard Davis, and signed by Willard Davis. We shall hereafter refer to the parties as Mrs. Arnold, Davis, and the bank. Mrs. Arnold disclaimed liability on the notes and counterclaimed against the bank for alleged damages sustained by her because of an alleged breach of a deposit contract with the partnership. Judgments in her favor were rendered by the trial court by denying relief to the bank on its suit on the notes, and granting her relief on the counterclaim against the bank, D.C., 116 F.Supp. 32.

Davis was engaged in the contracting business in Palmer, a small community in Alaska. He secured a contract from the United States to erect a garage and storage building. Being without sufficient funds to enable him to finance the project, he contacted Mrs. Arnold, whose credit at the bank was good, and induced her to enter into an agreement with him for the purpose of carrying out the contract. Mrs. Arnold was to secure the bond required by the contract and to supply the capital necessary to carry the work until it could be paid for out of the progress payments on the contract. Pursuant to the agreement Mrs. Arnold executed two notes of $5,000 each in favor of the bank. The bank placed $10,000 to the credit of the partnership and the money was used in starting the construction of the garage and storage building. At the time of the execution of the two $5,000 notes, it was expressly understood that they were to be paid out of the proceeds to be derived from the building project. In the course of time one of the $5,000 notes was paid from such proceeds, the note cancelled and returned to Mrs. Arnold.

Later, Davis, without consulting Mrs. Arnold, or in any manner informing her of his intended action, executed a note in favor of the bank in the sum of $5,100, signing the name of the partnership, Davis Construction Company, by Willard Davis, thereto. This note was accepted as payment of the remaining $5,000 note held by the bank and executed by Mrs. Arnold and later the note was returned to her. Subsequently, two other notes in suit, each in the sum of $3,000, were executed by Davis, signed, Davis Construction Company, Willard Davis.

Davis seems to have had other business ventures during the period in question and was not careful in segregating the financial transactions of the one from the other, with the result that funds were commingled, and indebtedness incurred in transactions other than the partnership project were paid for out of funds in the partnership account.

The notes in the sums of $5,100, $3,000, and $3,000, were not paid and the bank sought to hold Mrs. Arnold, apparently the only solvent member of the partnership, liable. She defended on the ground that Davis had no authority, either apparent or real, to bind the partnership by his sole signature.

█ The sole purpose of the partnership agreement between Mrs. Arnold and Davis was to build the garage and storage building for the United States. A written agreement was executed between Mrs. Arnold and Davis which specifically provides that "said partnership shall continue only for the performance of said contract, and upon completion of said contract, said partnership is automatically terminated." It is further provided that "this partnership is formed solely for the purpose of completing the said contract, and that all other undertakings of the individual partners shall not be considered as part of the assets of this partnership, nor will either party have the right to call upon the other for any interest not directly connected with the contract." That the provisions of the contract limiting its operation to the one undertaking were strictly adhered to by Mrs. Arnold is amply supported by the record. That the partnership agreement was for a single purpose establishes the association of the parties as a joint venture, and that they were not in trading. See, Walls v. Gribble, 1942, 168 Or. 542, 545–546, 124 P.2d 713. A joint venture is distinguished from a partnership in that one member cannot bind another unless he has either express authority or authority implied from the necessities of the particular transaction with which the joint venture is concerned. See

American Mut. Liability Ins. Co. v. Hanna, Zabriskie and Dacron, 1941, 297 Mich. 599, 298 N.W. 296, 299. Davis, as a joint adventurer, did not have the general implied authority of a partner in an ordinary trading or commercial partnership.

█ The power of one joint venturer to bind another must be derived from express authority or by implication from the nature of the agreement in the particular circumstances of each case.

In the instant case we find no evidence of express authority having been given Davis to execute the notes on behalf of the firm, nor can authority be implied. We have a situation where the parties were contemplating no long range operation which might carry with it future financing by means of borrowing. The parties must have contemplated that the contract price would finance the job; that the necessary preliminary financing would be taken care of by the $10,000 advanced by the bank and secured by Mrs. Arnold's notes; that progress payments would take care of all future expenses and provide funds for the repayment to the bank of the money advanced on the notes executed by Mrs. Arnold. It seems clear that the proper implication to be drawn from all the circumstances is that if future borrowing became necessary the manner in which it would be accomplished was a matter for future agreement.

█ We now consider whether Davis had apparent authority to bind the firm. Maze, the manager of the bank, was fully conversant with the agreement between Davis and Mrs. Arnold and the circumstances surrounding it. If the knowledge of Maze can be imputed to the bank there can have been no apparent authority. The bank argues that the knowledge of its agent, Maze, should not be imputed to it for the reason that Maze was acting adversely to the interests of appellant, his principal. This argument is bottomed on a finding of the trial court that a scheme existed on the part of Maze and Davis to defraud Mrs.

Arnold and that said scheme involved covertly extending the bank's credit to Davis on behalf of the firm for use on other than firm's business.

But assuming that Maze was acting adversely to appellant, his principal, his knowledge should nevertheless be imputed to appellant under the sole actor doctrine. Munroe v. Harriman, 2 Cir., 1936, 85 F.2d 493, 111 A.L.R. 657, certiorari denied Harriman Nat. Bank & Trust Co. v. Munroe, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443; cf. Restatement, Agency, § 282, sub. c. Maze was the manager of the bank and appears to have been in complete charge of its affairs; he was the sole representative of the bank in all dealings connected with the execution of the notes upon which this suit is brought. The bank is foreclosed from taking the inconsistent position of claiming on the one hand apparent authority based upon dealings with its sole agent, Maze, and on the other hand disclaiming the imputation of Maze's knowledge. That Maze was a sole actor is made more apparent by the fact that the bank was situate in a small town and it is common knowledge that in such places a banker has quite a close acquaintanceship with the residents and their business transactions.

■ There exists an additional reason why Davis had no authority to bind the firm, at least insofar as the note in the sum of $3,000, executed by Davis on the 17th day of October, 1951, is concerned. The trial court found that the money received by Davis from the bank on the firm's notes executed by him was used in the construction of a house for Maze and the Butte Road House. An examination of the bank statements received by the firm discloses that the $3,000 borrowed on the firm's note dated October 17, 1951, was never placed to the credit of the firm. This fact supports the trial court's finding to the extent that at least the sum of $3,000 was used for purposes other than the business of the firm. Davis certainly had no authority to bind the firm for money received on notes executed by him where the proceeds were used for other than partnership business. Cf. Dowling v. Exchange Bank of Boston, 1892, 145 U.S. 512, 12 S.Ct. 928, 36 L.Ed. 795.

The bank suggests that Mrs. Arnold should be estopped from setting up Davis' lack of authority to give the renewal note because of a benefit received therefrom by her in the discharge of her individual note through the acceptance of the renewal note in payment. Had Maze and Davis carried out the agreement entered into with Mrs. Arnold, the individual note, rather than being renewed, would have been paid from the progress payments on the construction contract. Mrs. Arnold received no benefit through the action of Davis and Maze in discharging her note by a renewal rather than by payment from the funds available from payments on the contract.

■ The bank urges that it is a holder in due course. It is unnecessary to determine whether a holder in due course can prevail over the defenses here asserted, because the bank must be considered to have taken the notes with notice of Davis' lack of authority. As heretofore stated, under the sole actor doctrine, Maze's knowledge is to be imputed to the bank. Munroe v. Harriman, supra. Maze, having knowledge of the entire transaction and relationship between Davis and Mrs. Arnold, ought to have known that Davis had no authority to execute notes on behalf of the firm.

■ Mrs. Arnold counterclaimed against the bank for breach of its contract of deposit with the firm. While the construction work was in progress Mrs. Arnold temporarily left the Territory of Alaska, and, inasmuch as she would not be present to sign checks, it was made a provision of the contract of deposit of the firm's account with the bank that all checks drawn on the firm's account must be signed by Davis and counter-signed by Maze, who was to see to it that the checks were drawn in connection with, and in payment for, work on the buildings being erected for the United States. In support of her coun-

terclaim appellee established that $3,-949.87 was paid out of the firm's account on checks not counter-signed by Maze and used on other than firm business. Mrs. Arnold thereby established breach of contract by the bank. Cf. Henderson v. Greeley National Bank, 111 Colo. 365, 142 P.2d 480, 1943.

The evidence further discloses that Davis had placed in the partnership account sums of money realized from activities in which he was engaged other than the firm enterprise. No evidence of the amount received from other sources appears; in fact, knowledge of such an amount could not be had by Mrs. Arnold in the absence of an accounting, and no accounting having been had the evidence produced in support of the counterclaim is insufficient to sustain it. We understand that an accounting is being sought.

The judgment on the counterclaim is reversed with directions to the trial court to grant a new trial thereon to be had after accounting suit has been finally terminated.

The judgment denying recovery on the notes sued upon is affirmed.