FLUOR CORPORATION, Ltd., et al., Union Tank Car Company, Ward Industries Corporation, Appellants and Cross-Appellees,

v.

UNITED STATES of America ex rel. MOSHER STEEL COMPANY, Appellees and Cross-Appellants.

Nos. 21307, 21307A, 21307B and 21307C.

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1969.

Rehearing Denied Feb. 11, 1969.

Evans, Kitchel & Jenckes, Phoenix, Ariz., Hull, Terry & Bret Harte, Boyle, Bilby, Thompson & Shoenhair, Tucson, Ariz., Thomas C. McConnell, Chicago, Ill. (argued), Lotterman & Weiser, New York City, for appellants & cross-appellees.

Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., Cusick, Watkins & Frey, Tucson, Ariz., for appellees.

Before HAMLIN, BROWNING and ELY, Circuit Judges.

BROWNING, Circuit Judge:

The district court rendered judgment in favor of Mosher Steel Company and against the various appellants for prices agreed to be paid for materials furnished and services rendered by Mosher in the fabrication of steel used in the construc-

tion of missile launch facilities in Arizona and California.[1] We affirm the trial court's judgment except as it denied prejudgment interest. As to this, we reverse and remand for further proceedings.

■ Appellants strongly attack many of the trial court's findings. We have, therefore, examined the record with care. We find substantial conflicts in the testimony and the documentary evidence, and even greater differences in the construction which the parties place on events leading to the litigation and the inferences which they draw from them.[2] We have not asked ourselves whether we would have resolved the conflicts and ambiguities as the trial judge did, nor whether we would have drawn the same inferences. United States v. Nat. Ass'n of Real Estate, 339 U.S. 485, 495–496, 70 S.Ct. 711, 94 L.Ed. 1007 (1950). We have, however, satisfied ourselves that upon an examination of the entire evidence we are not "left with the definite and firm conviction that a mistake has been committed" in any of the trial court's findings. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. (1948); see Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). We therefore accept those findings, and base the statements of fact in this opinion upon them.

Fluor Corporation, Ltd., was the prime contractor for the construction of the Arizona launch facilities, and the insurance company appellees were sureties on on Fluor's performance bond. Matich Bros. and M. M. Sundt Construction Corp., who are not parties to this litigation, were the prime contractors for the California launch facilities.

Fluor and Matich & Sundt entered into separate first tier subcontracts with Union Tank & Mfg. Co.[3] Union, in turn, entered into second tier subcontracts for steel fabrication work with IMI–Ward, a joint venture created by Idaho-Maryland Industries Inc. and Ward Industries Corporation.

When IMI–Ward fell behind schedule in the performance of its subcontract, Union, on October 10 or 11, 1961, instructed an IMI–Ward official to "farm out" the steel fabricating work, and approved the selection of Mosher to perform it. Because the IMI–Ward official did not think Mosher would accept an IMI–Ward purchase order, Union agreed that if a satisfactory contract could be worked out with Mosher, Union would give Mosher a Union purchase order.

On October 13, the IMI–Ward official negotiated a detailed contract with Mosher for the required work. As anticipated, Mosher would not accept IMI–Ward's credit. The IMI–Ward official then advised Mosher that a Union purchase order would be issued. On October 16, Mosher set out the agreed-upon terms in a letter addressed to the IMI–Ward official. That official signed the letter on behalf of Union and sent copies of the executed writing to Union. Mosher then began performance of the work.

Union told Mosher on October 23 that Union's purchase order would be issued within two or three weeks, and that the October 16 letter would serve as an interim purchase order until the formal purchase order could be mailed. Thereafter, on October 31, IMI–Ward asked Mosher, as a matter of accounting convenience for IMI–Ward, to change the designated customer on the job from Union to IMI–Ward, and to accept IMI–Ward purchase orders in place of those

---

1. Prior litigation in this court arising out of these projects is reported in Dragor Shipping Corp. v. Union Tank Car Co., 9 Cir., 361 F.2d 43 (1966); 371 F.2d 722 (1967); 378 F.2d 241 (1967).

2. The parties are well aware of these conflicts and differences; they have explored

them in great detail in their briefs. No useful purpose would be served by repeating them here.

3. Union acted principally through a division known as Graver Tank & Mfg. Co., and the trial court's findings refer to "Union" and "Graver" interchangeably.

of Union. Mosher agreed, provided Union would be responsible for payment.

IMI–Ward sent Mosher two purchase orders on November 3 covering the work to be done. Mosher informed Union that the completed material would not be shipped until Mosher received confirmation that Union would be responsible for payment.

■ On November 15, after securing IMI–Ward's approval, Union advised Mosher that Union would pay Mosher directly and deduct the payments from the amounts Union was to pay IMI–Ward under the latter's subcontract.[4] Mosher understood, and Union intended Mosher to understand, that its commitment extended to all the work covered by IMI–Ward's purchase orders of November 3. Upon receiving Union's commitment, Mosher changed the customer's name from Union to IMI–Ward, completed the work, and delivered the fabricated steel to the job sites.

On February 2, 1962, IMI filed a voluntary petition under Chapter 11 of the Bankruptcy Act. Mosher submitted a proof of claim in these proceedings, and was issued IMI stock under a plan of reorganization. Except for this stock, Mosher was not paid for its work.

The district court gave judgment against Union, finding that the commitment Union gave Mosher on November 15 and Mosher's completion and delivery of the work thereafter created a contract between Union and Mosher obligating Union to pay Mosher directly. Judgment was rendered against Fluor and its sureties under the Miller Act, 40 U.S.C. § 270a.[5] The district court entered judgment against Ward on the ground that IMI–Ward's November 3 work orders and Mosher's fabrication and delivery of material pursuant to such orders created a contract between Mosher and IMI–Ward obligating Ward to pay Mosher in accordance with the terms and conditions of those orders.

Union contends that Mosher performed the work for IMI–Ward; that Union's agreement, if any, was only a guarantee to pay Mosher if IMI–Ward did not; and that, being oral, this agreement to answer for the debt of another was unenforceable under the Statute of Frauds.

Ward, on the other hand, contends that the only viable contract was an oral agreement between Mosher and Union arising on October 13, binding Mosher to perform the work and Union to pay for it. If there was a November agreement between Mosher and IMI–Ward, Ward argues, it required nothing of Mosher which Mosher was not already obligated to do under its October agreement with Union, and, therefore, any promise by IMI–Ward was not supported by consideration. Furthermore, the only consideration for which Mosher bargained was Union's unconditional promise to pay Mosher directly. Consequently, any promise by IMI–Ward was not bargained for and hence was unenforceable under our decision in Colorado Nat'l Bank of Denver v. Bohm, 286 F.2d 494 (1961).

■ As we read the district court's findings, the court determined that *both* Union and IMI–Ward assumed direct obligations to pay Mosher for the work. IMI–Ward contracted directly with Mosher to have Mosher perform the work

---

4. The commitment was given orally. Union told Mosher that it would be confirmed by a subsequent letter. Although the letter was prepared by Union, it was not sent because Mosher continued to make shipments without it. Union argues that the sending of this letter was intended to be condition precedent to the formation of a contract, and that the trial court's finding to the contrary is clearly erroneous. We think the finding is supported by evidence from which the trial court could conclude that the promised letter was intended to be a written confirmation of an agreement already reached. Merritt-Chapman & Scott Corp. v. Gunderson Bros. Eng'r Corp., 305 F.2d 659, 664–665 (9th Cir. 1962), upon which Union relies, is inapplicable for this reason.

5. Since Fluor was not involved in the California project, the judgment against Fluor and its sureties was limited to the amount due for materials used in the construction of the Arizona facilities.

described in the November 3 work orders in return for payment by IMI–Ward of the prices fixed in those orders. This agreement was subject, however, to the condition precedent that Union also agree to be directly liable for payment. When Union agreed to pay Mosher, it became directly bound to Mosher. Union's promise also satisfied the condition precedent to the direct contractual obligations between IMI–Ward and Mosher.[6]

In view of Union's obligations under its subcontract with Fluor and Matich & Sundt, Union had a substantial interest in assuring performance of the work by Mosher. As the district court found, "in agreeing to pay Mosher directly, [Union] * * * acted primarily to protect and advance its own interests under its subcontracts * * *." Since Union's promise to pay was a direct and original undertaking rather than a collateral promise to pay IMI–Ward's debt, it was not within the Statute of Frauds, even though IMI–Ward was also obligated to pay for the work. Holmes v. Suffrin, 198 Ill.App. 45 (1916); Peters v. Raven, 159 Ill.App. 122 (1910); Leisman & Co. v. Otto, 64 Ky. (1 Bush) 225 (1866); cf. Granite City Lime & Cement Co. v. Board of Educ. of School Dist. 126, 203 Ill.App. 134 (1916). See 4 Corbin on Contracts § 926, p. 705.[7]

■ As to Ward's argument that any promise made by Ward to Mosher in November was without consideration because of Mosher's pre-existing contractual obligation to perform the same work for Union, it should be noted that the district court did not conclude that a Union-Mosher contract arose in October. Even if such a prior Union-Mosher contract existed, IMI–Ward's subsequent promise would still be supported by consideration. Under the arrangement finally agreed to, Mosher, at IMI–Ward's solicitation, undertook the additional obligation to designate IMI–Ward, rather than Union, as the customer, and to accept the IMI–Ward purchase orders. These new undertakings were sufficient to support IMI–Ward's promise to pay.[8]

■ Ward's reliance upon Colorado Nat'l Bank of Denver v. Bohm, supra, 286 F.2d 494, is also misplaced. Mosher's insistence upon a direct commitment from Union does not mean that this was the only consideration for which Mosher bargained. Mosher also sought and obtained a promise of payment from IMI–Ward. The fact that IMI–Ward's promise alone was not enough to satisfy Mosher, or that Union's promise alone might have been sufficient, is irrelevant. See Granite City Lime & Cement Co. v. Board of Educ. of School Dist. 126, supra, 203 Ill.App. 134; Peters v. Raven, supra, 159 Ill.App. 122; Restatement of Contracts §§ 111, 113.

■ Ward contends that Ward is not liable even if IMI is, because the extension of credit or the delivery of goods to one member of a joint venture does not obligate the joint venture. The cases upon which Ward relies involve the assump-

6. Ward argues that no agreement arose because Mosher rejected an element of IMI–Ward's initial offer, namely, that IMI–Ward's credit be substituted for that of Union. There was substantial evidence supporting the trial court's findings that IMI–Ward agreed to Mosher's counter-offer to accept IMI–Ward work orders and to substitute IMI–Ward for Union as the account customer if Union would agree to pay for the work.

7. Union also contends that its commitment was limited to materials produced for use in constructing the Arizona launch facilities. Although the testimony of one witness might be read as supporting the lim-

itation for which Union argues, as Mosher points out, there was other evidence supporting the trial court's finding that Union's commitment covered payment for all of the work Mosher was to do—whether used in construction of the Arizona facilities or those in California.

8. The basis for IMI–Ward's interest in these arrangements is suggested by the district court's finding that the prices which IMI–Ward had agreed to pay Mosher for the work were lower than those which IMI–Ward would collect from Union for the work.

tion of liability by a joint venturer beyond the scope of his authority to act for the joint venture.[9] Here, however, the district court concluded on the basis of findings supported by substantial evidence that IMI's acts were authorized by and performed on behalf of the IMI–Ward joint venture.

■ Both Union and Ward argue that because Mosher filed a claim in the IMI bankruptcy proceedings representing that the amount due Mosher was an unsecured independent obligation of IMI, and because Mosher accepted a distribution of the stock of the reorganized debtor on the basis of this claim, it is estopped from asserting that Union and Ward are liable. The result urged by Union and Ward can obtain only if it is required by some legal fiction, for Mosher in its proof of claim against IMI explicitly reserved its rights against Ward, Union, Fluor, and the sureties.[10]

Thus, unlike the claimant in Eads Hide & Wool Co. v. Merrill, 252 F.2d 80 (10th Cir. 1958), which is relied on by Ward and Union, Mosher did not in the bankruptcy proceedings elect the remedy of recovery against only one of the allegedly liable parties. Moreover, Mosher did not assume different positions as to the facts in that proceeding and in this. It is not for us to say whether the decision allowing Mosher's claim in the bankruptcy proceeding was correct. We do hold that Mosher's full disclosure and express retention of rights in that proceeding precluded an estoppel against Mosher in this litigation.[11]

In addition to defending against Mosher's claim, Union filed a counterclaim alleging that if liable at all it was liable only as a surety, and praying that Mosher be required to seek satisfaction first from Ward. In its findings and conclusions the trial court did not refer expressly to Union's counterclaim. When the omission was called to the court's attention, the court entered a judgment that Union "take nothing by its counterclaim." Union contends that the existence of a principal-surety relationship was admitted in Mosher's answer to Union's counterclaim and was established by the evidence, and that, in any event, the district court erred in disposing of the counterclaim without entering findings of fact and conclusions of law as required by Fed.R.Civ.Proc. 52 (a).

■ The purpose of Rule 52(a) is satisfied if the trial court's findings are sufficient to afford a clear understanding of the ground upon which the court based its judgment. Seligson v. Roth, 402 F.2d 883 (9th Cir. 1968). It is apparent to us that the trial court rejected Union's counterclaim because it found Union's relationship to the debt to be that of a direct obligor, not a surety. Contrary to Union's contention, Mosher did not admit in its pleadings that Un-

9. See, for example, Wrenn v. Moskin, 226 App.Div. 563, 235 N.Y.S. 405 (1929); American Mut. Life Ins. Co. v. Hanna, Zabriskie & Daron, 297 Mich. 599, 298 N.W. 296, 299 (1941); and Matanuska Valley Bank v. Arnold, 223 F.2d 778, 15 Alaska 557 (9th Cir. 1955).

10. Mosher's claim in the bankruptcy proceeding stated: "Claimant corporation claims that Ward Industries Corporation, as joint venturer with the Debtor, and Union Tank Car Company through its division, Graver Tank & Mfg. Co., are also liable to claimant corporation for the entire said debt, * * *. Claimant corporation's filing of the claim in this proceeding is made without prejudice to its rights against the said Ward Industries Corporation, and the said Union Tank Car Company * * *. In addition * * * claimant corporation has claimed that Fluor Corporation Ltd. and its sureties are liable * * *."

11. Mosher will not obtain double recovery. In computing the amount of the judgment, the trial court deducted the stipulated value of the stock received by Mosher in the bankruptcy proceeding.

ion was merely a guarantor;[12] and, as we have said, the trial court's finding that Union agreed to a direct and primary obligation is not clearly erroneous.

■ On the basis of this finding we also reject the contention, advanced by Fluor and its sureties, that Mosher was not a "person having direct contractual relationship with a subcontractor" of Fluor within the meaning of 40 U.S.C. § 270b. We are not convinced that recognition of Mosher's claim will extend the coverage of the Miller Act beyond that intended by Congress, nor that the result will be to "impose liability on the payment bond in situations where it is difficult or impossible for the prime contractor to protect himself." MacEvoy Co. v. United States, 322 U.S. 102, 110, 64 S.Ct. 890, 895, 88 L.Ed. 1163 (1944). Fluor could readily have protected itself by requiring appropriate security from Union. See Hill v. American Surety Co., 200 U.S. 197, 204–205, 26 S.Ct. 168, 50 L.Ed. 437 (1906); Mankin v. Ludowici-Celandon Co., 215 U.S. 533, 540, 30 S.Ct. 174, 54 L.Ed. 315 (1910).

We turn to Mosher's cross-appeal from the portion of the judgment which denied prejudgment interest on the amount found to be due under the contracts.

There is some disagreement among the parties as to whether the governing law is that of the state of the forum (Arizona) or of the states in which the contracts were to be performed (Arizona and California). Since there is nothing to indicate that the relevant law of the two states differs, we have not concerned ourselves with the problem. The California rule is stated in section 3287, California Civil Code, "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day * * *." Arizona follows the same general rule.[13]

■ Cross-appellees argue that Mosher's damages were not "certain or capable of being made certain by calculation" prior to judgment because of the disputed value of the IMI stock which Mosher received in partial payment of its claim in the IMI bankruptcy proceedings. The dispute over the stock's value was not resolved until the parties stipulated to its worth during the course of trial.[14]

12. In its answer to Union's counterclaim, Mosher admitted that it had alleged in the complaint that Union was a surety, but Mosher also stated "the amended Complaint includes other counts and allegations as therein set forth." These "other counts and allegations" of Mosher's complaint asserted that Union was directly liable to Mosher for the debt. "A party may * * * state as many separate claims * * * as he has regardless of consistency * * *." Fed.R. Civ.Proc. 8(e) (2).

13. The California statute was enacted in 1872, and states the common-law rule. Restatement, Contracts § 337(a). Arizona has not codified the rule, but it is followed by the courts of that state. United States Fidelity & Guar. Co. v. California-Arizona Constr. Co., 21 Ariz. 172, 186 P. 502, 509 (1920); Palmcraft Dev. Co. v. City of Phoenix, 46 Ariz. 400, 51 P.2d 921, 103 A.L.R. 811 (1935); Schwartz v. Schwerin, 85 Ariz. 242, 250, 336 P.2d 144, 149 (1959); Feighner v.

Clarke, 2 Ariz.App. 286, 408 P.2d 219, 222–223 (1965), vacated on other grounds, 101 Ariz. 334, 419 P.2d 513 (1966) (in banc); Betz v. Goff, 5 Ariz.App. 404, 406, 427 P.2d 538, 540 (1967).

A recent addition to the California statute provides that where an unliquidated contract claim is involved interest may be awarded, in the court's discretion, for some or all of the period between the filing of suit and entry of judgment. Calif. Stats.1967, ch. 1230, §.1.

14. Cross-appellees also intimate that Mosher should be denied prejudgment interest because the issue of liability was disputed. The generally accepted rule is that uncertainty as to liability, as distinguished from uncertainty as to the amount of the damage, does not bar recovery of prejudgment interest. Restatement, Contracts § 337(a), comment d. Despite disputed liability, prejudgment interest was awarded in both Feighner v. Clarke, 2 Ariz.App. 286, 408 P.2d 219, 222–223 (1965), vacated on other grounds,

Clearly, this circumstance did not render the amount of Mosher's claim uncertain until it arose. At a minimum, therefore, Mosher was entitled to prejudgment interest on the whole amount owing under the contracts from the date it became due (thirty days after February 28, 1962) to the date Mosher received the stock in partial payment.

It is equally apparent that Mosher was not entitled to interest after the latter date upon the portion of his claim which had been paid. But uncertainty about the precise value of the partial payment should not bar Mosher from compensation for the continued loss of the use of the much larger balance remaining unpaid. Interest on the difference between the amount due Mosher under the contracts and the value of the stock as determined at trial should be allowed from the date the stock was received to the date of judgment. Although we have found no decisions directly on point, this result is supported by analogous authorities.

Thus, even though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest.[15] If the unliquidated set-off or counterclaim is based upon a breach unrelated to the sum due under the primary claim, interest is allowed on the entire claim. The amount of the counterclaim or set-off as determined at trial is then deducted from this total. If, as in the present case, the unliquidated set-off or counterclaim constitutes a partial payment of the primary claim, interest is allowable on the balance due after deducting the amount of the set-off or counterclaim as determined at trial.[16]

The result we reach is also supported by the principle recently applied in Coleman Eng'r Co. v. North American Aviation, 65 Cal.2d 396, 55 Cal.Rptr. 1, 420 P.2d 713 (1967). There, defendant argued that prejudgment interest was barred because a lesser amount of damages was awarded than plaintiff had originally demanded. The reduced claim resulted from the plaintiff's successful efforts in obtaining settlements with third persons and in salvaging materials. The Supreme Court of California held that under these circumstances uncertainty as to the amount due did not bar an award of prejudgment interest. The court stated, "we are satisfied that reductions in damages due to plaintiff's efforts to mitigate damages should not preclude an award of prejudgment interest. If the rule were otherwise, a plaintiff might be encouraged to forego opportunities to mitigate damages so as not to jeopardize his right to prejudgment interest." Similarly, Mosher's right to prejudgment

101 Ariz. 334, 419 P.2d 513 (1966) (in banc) ; and Betz v. Goff, 5 Ariz.App. 404, 406, 427 P.2d 538, 540 (1967). California cases to the same effect are collected in 5 U.C.L.A.L.Rev. 262, 266 n. 28 (1958).

15. Hansen v. Covell, 218 Cal. 622, 631–632, 24 P.2d 772, 775, 89 A.L.R. 670 (1933) (in banc) ; McCowen v. Pew, 18 Cal.App. 482, 483 et seq., 123 P. 354, 355–356 ; Hunt Foods, Inc. v. Phillips, 248 F.2d 23, 26–27 (9th Cir. 1957). Other California decisions are collected in 14 Cal.Jur.2d 79, 705–706, and 5 U.C.L.A.L.Rev. 262, 268 n. 37 (1958). See also Mall Tool Co. v. Far West Equip. Co., 45 Wash.2d 158, 273 P.2d 652, 663 (1954) ; Sam Macri

& Sons, Inc. v. United States, 313 F.2d 119, 129–130 (9th Cir. 1963) ; American Sur. Co. of New York v. United States, 368 F.2d 475, 479–480 (9th Cir. 1966) ; 5 Corbin, Contracts § 1046, p. 286, § 1051, pp. 305–06.

"In short," Professor McCormick states, "it is the character of the claim and not of the defense that is determination of the question whether an amount of money sued for is a 'liquidated sum.'" McCormick on Damages, § 54, p. 216 (1935).

16. Hansen v. Covell, 218 Cal. 622, 631–632, 24 P.2d 772, 775–776 (1933) (in banc) ; Hunt Foods, Inc. v. Phillips, 248 F.2d 23, 26–27 (9th Cir. 1957) ; and cases collected at 14 Cal.Jur.2d § 79, pp. 705–06.

interest should not be denied because Mosher in seeking and obtaining partial payment from a joint obligor reduced the amount of its claim against cross-appellees.

The judgments are affirmed on the appeals and reversed for further consideration on the cross-appeal.